### HAVANA CITY RY. CO. v. CEBALLOS.

(Circuit Court of Appeals, Second Circuit.   June 23, 1905.)

No. 160.

1. ESCROW AGREEMENT—CONSTRUCTION.

Where the holder of a Havana horse car franchise executed an assignment of his right to the concession, and agreed to follow the assignment by proper transfer when the Havana authorities should grant a right to use electricity as a motive power for the road, which assignment defendant acknowledged he had received, and was to hold in escrow in accordance with the terms of the agreement, which trust he thereby accepted, the receipt constituted a mere escrow contract, by which defendant agreed to hold the assignment until an electric concession was granted, and did not create a fiduciary relation between him and complainant.

2. SAME.

The assignment contract having been canceled three years after it was made, because of the inability of complainant and the assignor to then obtain an electric concession, the fact that defendant had acted as the holder of the escrow agreement for complainant, and had knowledge thereof, etc., did not preclude him, more than a year after the contract was canceled, from himself obtaining an assignment of the original concession.

Appeal from the Circuit Court of the United States for the Southern District of New York.

On appeal from a decree of the United States Circuit Court for the Southern District of New York, entered July 28, 1904, dismissing the bill with costs.

On the 19th of June, 1893, the city of Havana granted to Mariano De La Torre a concession to build and operate a horse railway on certain designated streets in the said city, which concession was subsequently transferred by De La Torre to Francisco Pla. On October 22, 1895, Pla entered into a contract with the complainant pursuant to which he agreed to apply to the city of Havana, under article third of the concession, for the right to substitute electricity for horses as the motive power of the said railway and within 30 days after the grant of electricity the complainant agreed to pay to Pla $15,-000 in Spanish gold, and other sums after the completion of the road. The contract then proceeds as follows:

"Upon the signing hereof said Pla will execute an assignment of said Concession to the said Havana City Railway Company, which he will place in the hands of Mr. J. M. Ceballos of New York to so remain until the Company pays the Fifteen thousand dollars as agreed, or, when said J. M. Ceballos is satisfied by the Company's order upon the bankers engaging to underwrite the Company's bonds, he will then deliver such assignment to the company and will receive from said Pla the deed of the Electric Concession which will then be delivered to the company, so that it can issue its bonds and record its mortgage."

On the same day Pla executed the following instrument:

"80 Wall St., New York, Oct. 22, 1895.

"For value received I hereby sell, assign and transfer unto the Havana City Railway Company of West Virginia, U. S. A. all my right, title and interest into the Concession for a horse car line heretofore granted by the City of Havana to Manuel De La Torre, upon the plans filed by Col. J. Ruiz, and agree to follow this assignment by proper transfer by Deed to said Co. when said Havana authorities shall grant Electricity as a motive power for said road.                                              Fr. Pla 'y Picabia."

This assignment was delivered to the defendant who signed the following receipt:

"Chartering Department.

"J. M. Ceballos & Co.
Cable 'Ceballos'
P. O. Box 3434.                                    80 Wall St.,
     Agents                                New York, Oct. 22, 1905.
Havana City Ry. Co.,
     New York.
"I have Rec'd from Mr. F. Pla of Havana, Cuba, an assignment to you of the Horse Car Concession granted by City of Havana to Manuel De La Torre which I am to hold in escrow in accordance with the terms of the agreement made yesterday between your Co. and Mr. Pla which trust I hereby accept.                                             J. M. Ceballos."

The complainant insists that by virtue of this receipt the defendant became trustee for the complainant in the matter of the acquisition of the right to use electricity as the motive power of the proposed railway and that he must account to complainant for all moneys received by him in the disposition and sale of the said concession and rights thereunder.

For opinion below, see 131 Fed. 381.

C. Godfrey Patterson, for appellant.
Jno. J. Adams, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). An examination of the receipt, which is the foundation of this action, discloses the fact that it is simply an escrow contract by which the defendant held the assignment in accordance with the agreement between the complainant and Pla. In other words, after Pla had secured the right to use electricty and the complainant had paid him $15,000 the defendant was to deliver the assignment to the complainant and not until then. This escrow contract was drawn up by the complainant's president and uses the words "which trust I hereby accept" but we think the complainant places an erroneous interpretation upon these words when it insists that in all subsequent matters relating to the Havana concession the defendant acted as the complainant's trustee. The language of the instrument itself leaves no doubt as to the nature of the trust—namely, to hold the assignment in escrow as agreed.

A clear and comprehensive treatment of the subject of escrows will be found in 16 Cyc. 561. At page 575 the writer says:

"Until the escrow contract has been made, the depositary has no rights or authority enforceable at law. When this has been made and the instrument deposited, the depositary is not the agent of the grantor, obligor, or promisor alone, but he is the agent of both parties. When the condition upon the happening of which the instrument is to take effect is performed, the depositary becomes the mere agent or trustee of the grantee and the depositary's possession is the possession of the grantee. The depositary must have the power to judge whether the condition has been performed, in order to act, unless he is relieved of this duty by the stipulations of the parties. Where he has such power and exercises it, the nonperformance of the condition cannot be asserted against bona fide purchasers. A depositary who violates the terms of the escrow contract is liable in damages for the loss suffered thereby."

The condition upon which the defendant was to deliver the paper held by him in escrow never arose, and therefore he did not and

could not violate the escrow contract. He was not a party to any other contract with the complainant.

By the terms of the agreement of October 22, 1895, both parties agreed to use their influence and energies to procure the grant of electricity as soon as possible. It does not appear that complainant made any affirmative move to secure this grant. It does appear that Pla did endeavor to secure it, but was unable to do so owing in part, no doubt, to the disturbed condition of the island of Cuba at the time in question. On the 24th of August, 1897, Pla wrote the complainant's president, Alexander, saying that he had been working to secure the change to electricity, had been unable to do so and was convinced that further effort was useless. The letter concludes as follows: "You will consider our agreement cancelled and this will serve to notify you." It is said that the statements of fact in this letter are not worthy of credit because of statements made by Pla and others to Alexander a year afterwards and testified to by him. This testimony was clearly hearsay even though it came out on cross-examination. But even though it be true that both parties wholly ignored their contract obligation to procure the right to use electricity it is not easy to perceive how the defendant is affected thereby. He was under no obligation to procure a grant of electricity for either Pla or the complainant. An examination of the record makes it quite evident that neither party regarded the concession of the October agreement as of great value until other parties with capital, energy and skill had organized the Havana trolley system and made it a success. Pla did not agree to assign his horse car line concession; he only agreed to assign the electrical concession if he got it. We cannot see that others, not parties to this agreement, were precluded from entering the field as competitors, even though they knew of the relations between Pla and complainant. If Pla has broken his contract he is liable in damages, but in order to make the defendant liable it must appear that he has violated some duty or obligation which he owed to the complainant. He may have been a "go-between"; his knowledge of the Spanish language made his services as an interpreter valuable, but he was not an agent or a trustee; he was not employed or paid by the complainant; he received no money for it; he incurred no obligation on its behalf. The transaction with defendant took place in 1895. Two years afterwards the contract was canceled by Pla and more than a year after the cancellation, December 16, 1898, the horse car concession was assigned to defendant. The complainant's theory seems to be that the defendant, while acting in a fiduciary relation to the complainant, took advantage of the knowledge thus obtained to prevent the complainant from obtaining the concession in order that he might procure it for himself. To state the proposition more plainly the defendant is charged with having combined with Pla to defraud the complainant of valuable rights. We do not pause to analyze the legal aspects of this contention for the reason that it cannot be sustained upon the facts; the evidence falls far short of proving a fraudulent con-

spiracy. The defendant did not act in his individual capacity until long after it was manifest that the grant of electricity under the contract of October, 1895, could not be obtained.

The decree is affirmed.