## KENNEDY et al. v. RABY.

No. 22889.   Sept. 17, 1935.

Rehearing Denied Oct. 29, 1935.

Allen, Underwood & Canterbury, for plaintiffs in error.

David Golden and Wayne C. Evans, for defendant in error.

PER CURIAM. This was an action instituted in the district court of Tulsa county by Gertrude M. Raby, defendant in error, against the above-named defendants jointly.

The parties will be referred to as plaintiff and defendants, as they appeared in the trial court.

At page 8 of defendants' brief they say:

"There was some competent evidence submitted to the jury which reasonably tends to show negligence. This might justify a verdict, but for the fact that the plaintiff had executed the release in evidence."

"We concur in this conclusion and find further that under the evidence of the physicians and surgeons that plaintiff had suffered a fracture of the upper jaw, that it required twelve or fifteen stitches to close the wounds on her face and nose, that she suffered severe pains, and that several permanent scars remained on her nose and face. The evidence fully supports the judgment, which was for $2,000."

The major controversy in the trial court, and here, has to do with a purported release of all damages, pleaded by defendants. The question was urged with great skill and energy in the trial court and has been ably briefed in this court.

Plaintiff's petition alleged numerous acts of negligence and set forth the injuries sustained by her in the collision. Defendants pleaded a general denial, contributory negligence, and a release for all damages growing out of said accident for a consideration of $25.

For reply plaintiff pleaded a general denial, and further states: That on or about the 23rd day of December, 1930, plaintiff did execute an instrument in writing, which was represented to her by the agent of defendants to be a release of medical expenses only, in the sum of $25; that at the time the release was obtained plaintiff was a country girl, 18 years of age and inexperienced in business transactions; that at the time she was suffering great and excruciating physical and mental anguish, being at the time under the care of a physician; that the upper part of plaintiff's face, including one eye, was covered by a bandage; that at said time she had no knowledge of the seriousness or permanency of her injuries; that in order to induce plaintiff to sign said release, the agent of the defendant told her that he had ascertained from plaintiff's physician that her injuries were inconsequential and would heal in a few days without leaving any permanent scars or disfigurement; that plaintiff relied on said misrepresentations, but that defendants' agents knew said representations were false and untrue. In said reply it is further alleged that at the time said release was executed, plaintiff was

suffering excruciating physical pain and mental anguish by reason of the injuries sustained in said collision as aforesaid, and that plaintiff was unable to think or reason clearly and logically, and was unable to see clearly and properly, and was totally incapacitated to transact any business or to execute any contracts; and that on said date defendants' agent, knowing said incapacity, and for the purpose of defrauding this plaintiff, caused her to execute said instrument; that said agent further fraudulently represented that such settlement of medical bills would not estop or preclude plaintiff from seeking damages for her other injuries; that when plaintiff attempted to read said instrument, defendants' agent fraudulently assured plaintiff that it was not necessary, as the instrument was only a release for medical expenses. There was a prayer for modification of the purported release which was later, on motion of plaintiff, stricken out.

Defendants filed motion to strike the reply as a departure, or, in the alternative, that the pleadings be recast so that the petition should contain two causes of action, one in equity for the reformation of the release, and one for the recovery of damages, whereupon plaintiff asked and was given leave to strike from the reply the prayer for reformation as hereinbefore set out.

Defendants thereupon filed a motion in which they asked the court to first try the equitable issues and then to submit to the jury the question of damages. This motion being overruled, a demurrer to the reply was filed and overruled. The same question was raised by an objection to the introduction of any evidence, request for instructed verdict, demurrer to the evidence, motion to require plaintiff to elect, and in the motion for new trial.

The substance of the pleadings is thus set forth at length on account of the insistence of defendants that, under the pleadings, the validity of the release should not have been submitted to the jury. The evidence, in which there is little conflict, shows a collision of two automobiles, in which plaintiff was seriously injured, and from which she will be permanently scarred and disfigured. That the accident occurred on the 18th day of December, 1930; that a physician was called and dressed the injuries, which, among other things, included 12 or 15 stitches to close the wounds. Early on the evening of December 23, 1930, an agent of defendants, in company with a notary public, called on plaintiff and her family at their home in the country, there being present at the time

plaintiff, her father, her brother and an uncle and aunt. At the time plaintiff wore a bandage which covered a portion of her face, including one eye. Plaintiff, and other members of her family, testified that the agent of defendants told them that his company had authorized him to pay $150, $100 for the car and $50 for the two doctor bills. (Plaintiff's brother was injured in the same collision.) That he had talked to their doctor who said their injuries would be well in a few days and would need no more treatments; that the only light in the house was a coal oil lamp which did not properly light the room; that the agent prepared releases for plaintiff, her brother and her father to sign, which purported to release defendants from all injuries of every character to plaintiff and her brother and also settled with her father for the damage to his car. Plaintiff testified that she was suffering at the time, that the agent told her what to write and where to sign, and that in her physical and mental condition she did not and could not have understood the release which she signed. The court instructed the jury that plaintiff, having admitted that she signed the release, must prove by clear, cogent, and convincing evidence that same was procured from her by fraudulent representations of the agent of defendants, as charged in her reply, or that by reason of her pain and suffering she was not capable of comprehending or understanding its contents and effect at the time she signed it, and unless the jury find that the plaintiff has sustained this burden of proof, said release constituted a complete defense to the plaintiff's cause of action, and that their verdict should be for the defendants. Conversely the court told the jury that if plaintiff had sustained the burden of proof, the release did not constitute a defense.

Defendants seriously contend that the release pleaded by them constitutes a complete defense to the action, and, under the pleadings, should not have been submitted to the jury, but their contention is largely technical and ignores a long line of cases in this court in which the procedure in the instant case was approved. Defendants also make the point that the avoidance of the release by plaintiff was an equitable proceeding and should have been tried by the court. Numerous authorities are cited by defendants in which this abstract principle is announced, but the manner in which the question was treated by the trial court in this case seems in harmony with numerous decisions of this court. In the case of Owens v. Purdy, 90

Okla. 256, 217 P. 425, in which similar contentions were made, this court said:

"It is the plain, persistent, unyielding intent of the Legislature to make the foregoing Code provisions (secs. 178, 231, 263, 264, 265, C. O. S. 1921, mandatory."

When a plaintiff has complied with such provisions and stated facts which show that he has sustained a detriment, without fault on his part, and shows that said detriment has been caused by the wrongful conduct of another, states facts which show with reasonable clearness that in law or equity the party is guilty of such wrongful conduct, is liable to plaintiff for the results thereof, it then becomes the duty of the court, under the purpose for which it is created, to determine from the allegations and proof what relief the plaintiff may be entitled to, and in order to enable them to fulfill such purpose, the district courts are endowed with the dual power of a chancellor and a court of law, so that under the facts stated and proven, if the law be adequate, the court will award such relief as the law authorizes. In the case of St. Louis & S. F. Ry. Co. v. Reed, 37 Okla. 350, 132 P. 355, the issues were very similar and the contentions made the same as here. The court said:

"Litigants who do not desire the good faith of their acts ouestioned should not use such unseemly haste in their efforts to escape liability on account of admitted wrongful acts such as the evidence in this case discloses, and when we consider fairly all the facts and circumstances appearing in evidence in this case; the admitted liability on the part of the company; the age and intelligence of the injured woman; the fact that the claim agent was on the train with her; that he procured a carriage at Hugo, without solicitation, and took her to the hotel and secured the services of the company physician, together with the representations made to plaintiff by the physician; the taking of the release immediately thereafter and within a few hours after the accident; the insignificant sum of $10 allowed her; the fact that she was injured more seriously than she realized, all indicate an undue haste on the part of the railway company, and which with other facts and circumstances as detailed in the evidence warranted fully the verdict of the jury."

To the same effect are the following: St. Louis & S. F. Ry. Co. v. Richards, 23 Okla. 256, 102 P. 92; C. R. I. & P. Ry. Co. v. Cotton, 62 Okla. 168, 162 P. 763, R. C. L. 415-416.

The evidence, which was practically undisputed, brings this case clearly within the rule announced in the foregoing cases. The plaintiff was an inexperienced country girl, 18 years of age; she suffered serious injuries and permanent disfigurement; the claim agent with a notary public called on plaintiff at night in a room poorly lighted; it is admitted that the plaintiff's head and face were bandaged, covering one eye; she testified, and the jury evidently believed her, that she was suffering from her injuries and could not and did not comprehend what was going on. There was competent evidence that the agent told her that he had consulted her physician and that her injuries were trivial; that she believed these statements to be true, and signed the release involved for the sum of $25, which we hold to be wholly inadequate under the circumstances. As was intimated in the Reed Case, supra, when litigants visit the bedside of an injured party in order to settle with her before the surgical dressing has been removed, they should not be surprised when the courts permit their methods to be investigated. We therefore hold that the question of the validity of said release was properly submitted to the jury.

But one other question needs to be considered. While the jury was being questioned on their voir dire, plaintiff's attorney propounded to all the jury collectively the following question:

"At this time I want to ask if any one of you have any interest whatsoever in any insurance company that carries indemnity insurance, indemnifying persons against liability in automobile accidents?"

The defendants objected to the questions and the jury was retired, during which time there was considerable discussion before the court, after which the objection was overruled. The defendants then, in the absence of the jury, moved the court to discharge the jury and declare a mistrial, which motion was by the court overruled. The record made by the parties, in the absence of the jury, indicated that plaintiff's attorney acted in good faith in eliciting this information. Defendants contend that the asking of said question was error, and, among other authorities, cite Bass Furniture Co. v. Electric Supply Co., 101 Okla. 294, 225 P. 519, in support of their contention. The Bass Case was reversed on the ground that it was apparent that the examination of the jurors was to a large extent for the purpose of conveying to the jury the information that the plaintiff was protected against loss by insurance. But in the Bass Case it was held:

"It is our opinion that it is entirely proper for counsel to ask jurors such questions as may reasonably be necessary to ascertain whether they are free from prejudice and bias which may affect their verdict, and an examination of the veniremen as to their con-

nection with indemnity insurance companies can be asked for the purpose of determining whether the venireman is connected with the company in such a way as to probably affect his verdict."

The court further held in the body of the opinion in the Bass Case as follows:

"The allowance of such questions must necessarily rest largely in the discretion of the trial court and the case will not be reversed because of the action of the trial court in that regard, unless there has been an abuse of discretion."

To the same effect are the following cases: Letcher v. Skiver, 99 Okla. 269, 226 P. 1029; Aderhold v. Bishop 94 Okla. 203, 221 P. 752.

In the Letcher Case, supra, it was said:

"All cases cited by defendant appear to have turned upon the fact that in the opinion of the court the mention of the insurance being carried by defendant was designedly injected into the case for the purpose of prejudicing the jury, and the prejudice was manifest in the excessive amount returned in their verdict."

In this case it appears that the trial judge was eminently fair in his ruling on the objection and in the discussion leading up to the ruling. There is nothing in the record to indicate bad faith on the part of the plaintiff's attorney. In a city the size of Tulsa it would occasion no surprise to find a stockholder of some indemnity company in the jury panel, and, if so, litigants and their counsel would be entitled to elicit such fact. There is nothing in this record to suggest prejudice on the part of the jury, or that the verdict is excessive.

Other questions are raised, but we do not consider them material. Defendants appear to have had a fair trial; the verdict of the jury is amply supported by the evidence. The judgment of the lower court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Guy Green, Cleo Cund and R. H. Brown in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Green and approved by Mr. Cund and Mr. Brown, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.