## STATE LIFE INSURANCE CO. v. USSERY et al.

No. 24755.   Feb. 16, 1937.

Rehearing Denied March 2, 1937.

Application for Leave to File Second Petition for Rehearing Denied June 22, 1937.

Rollin E. Gish, for plaintiff in error.

B. A. Hamilton and A. M. Widdows, for defendants in error.

PER CURIAM. This is an appeal from a judgment of the district court of Tulsa county. The action was instituted by Emily Holder (formerly Ray), as plaintiff, against the State Life Insurance Company, as defendant, to rescind a release and settlement and to recover under the double indemnity clause of an insurance policy. Verdict by divided jury was returned in favor of the plaintiff. Defendant gave notice of intention to appeal from the judgment rendered on the verdict and order denying its motion for new trial. The plaintiff departed this life and the cause was revived in the names of LeRoy Ussery and Willie Ussery as executors of the estate of the original plaintiff. The parties will hereafter be referred to as they appeared in the trial court. The plaintiff in her second amended petition alleged, in substance, that she was the widow of one Oliver Ray and the beneficiary under a certain policy of insurance on his life; that said policy provided for the payment of the sum of $2,500 in case of death of the insured from causes other than accidental, and in the event that death should result from an accidental cause, then for the payment of double the principal sum named in said policy, or the sum of $5,000; that the insured sustained an accidental injury on December 13, 1927, which was the proximate cause of his death on February 5, 1928, and that under the terms of said policy plaintiff was entitled to receive double the face amount thereof. Plaintiff further alleged that she was young, ignorant, and inexperienced in business affairs and relied upon certain representations made to her by an agent of the defendant with reference to the effect of a death certificate and was thereby induced to accept

the face value of said policy in full settlement of her claims thereunder and to surrender said policy and to release the defendant from any further liability thereon; that while plaintiff was ignorant of her rights under the policy and the law, defendant was fully aware thereof and by the acts of its agent deceived the plaintiff with regard to the effect of the double benefit provision of said policy; and that such acts and representations on the part of the defendant amounted to a fraud upon her. Wherefore she sought to be relieved from her act of settlement and to obtain rescission and cancellation thereof and a judgment for the sum of $2,500 with interest thereon. The answer of the defendant, after a general denial, admitted the issuance of the policy and the death of the insured, and specifically denied that the insured had died from causes covered by the double indemnity provision of said policy; denied the authority of its agent to make any representations with respect to liability under the policy which would be binding upon the defendant; denied all allegations of fraud and misrepresentations and specifically pleaded that the policy by its terms provided that payment was to be made upon due proof of death made to the defendant at its home office; further pleaded that form for making proof of death was delivered to the plaintiff and held by her for approximately 60 days before she completed the same and sent it in to the home office of the defendant, and that immediately upon receipt of such proof of death submitted by the plaintiff, the defendant had paid to her the face amount of said policy and that plaintiff had accepted the same and had receipted the defendant in full therefor and surrendered the policy and released the defendant from all further claims thereunder. Defendant further pleaded that the plaintiff had acted in said negotiations with full knowledge of her rights and the facts surrounding the transaction and was barred both by laches and the statutes of limitations from maintaining the action. The material facts as shown by the record may be briefly summarized as follows: One Oliver Ray, the former husband of the plaintiff, while working for the Gypsy Oil Company December 13, 1927, sustained an accidental injury which necessitated the amputation of his thumb. He was under the care of the Gypsy Oil Company physician until the latter part of January, 1928, when he returned to work for a couple of days and again became ill and returned to the care of the physician of the Gypsy Oil Company. He was sent to a hospital at Tulsa, where his trouble was diagnosed as streptococcic sore throat, which in turn was followed by meningitis. The insured was violently ill and departed this life on February 5, 1928. Shortly after the death of the insured, a Mr. Shideler, who had sold the policy to the insured, called to see the plaintiff for the purpose of having her make proof of death of the insured so that the loss under the policy might be paid. Plaintiff inquired of him with respect to her right to claim payment under the double indemnity provision of the policy, and according to her testimony she was advised that the payment would be governed by the cause of death, which would depend in turn upon the certificate of death made by the physician who attended the insured during his last illness; that plaintiff thereupon declined to execute the proof of death and apparently retained the form, although there is some dispute in this regard. Dr. Washington, who attended the insured in his last illness, made three different death certificates, which were filed in the office of vital statistics at Tulsa and Oklahoma City. The first of these certificates was dated February 5, 1928, and gave as the cause of death "injured thumb—streptococcic septicemia contributory strep meningitis." The second of said death certificates was dated February 7, 1928, and gave as the cause of death "injured thumb contributory septicemia." The third was dated February 15, 1928, and gave as the cause of death "streptococcic throat contributory meningitis and strep septicemia." None of these certificates nor copies thereof appear to have been furnished to the defendant directly. In the proof of death which was furnished to the defendant at its home office the plaintiff, in response to the query regarding cause and circumstances of death, stated: "Injured thumb December 13, 1927, took severe chill and headache Jan. 23, sore throat developed septicemia." And in response to the query concerning the precise duration of last illness of deceased stated: "December 13, 1927, died February 5, 1928;" and the statement of attending physician which was attached to said proof gave "streptococcic septicemia due to septic throat" as the cause of death and attributed it to infection from some other person. The evidence as to whether the injury to the thumb had healed prior to his last illness was in dispute, as was likewise the evidence as to whether the death of the insured was brought about by infection induced by the injury or from an independent cause. Dr. Washington,

who had attended the insured during his last illness, had departed this life prior to the trial and his testimony was not available. The testimony of other doctors who attended the insured was to the effect that his death was due to causes other than the injury, although they admitted that there was a possibility of infection coming from the injured thumb. A physician testifying for the plaintiff in response to a hypothetical question gave it as his opinion that death was due to the injury. As grounds for reversal the defendant assigns eight specifications of error and presents them under seven propositions which may be summarized briefly as follows: First, that there was no competent evidence to sustain a recovery under the double indemnity provision of the policy; second, that the pleadings and proof of fraud in connection with the settlement and release were insufficient to justify its rescission and cancellation; third, that the plea of laches and limitations should have been sustained; fourth, that the defendant was prejudiced by the admission of incompetent evidence; fifth and sixth, error in giving instructions numbered 3, 4, and 8; and seventh, that rescission could not be granted in the abscence of a restoration of the benefits received.

As we view this record, the decisive question is whether the proof of the plaintiff was sufficient to justify a rescission and cancellation of the release and settlement executed by the plaintiff to the defendant in April, 1928. While it is the policy of the law to encourage settlements and compromises, yet the courts will not hesitate to set aside a release when it has been procured by fraud. St. Louis & S. F. R. Co. v. Bruner, 52 Okla. 349, 152 P. 1103. If the defendant either independently or through its agent was guilty of overreaching, unfair practice, or of using its superior knowledge to take advantage of the ignorance, inexperience, or credulity of the plaintiff and thus obtain for itself an unfair advantage, it should not be permitted to retain the same. As said in the case of Provident Life & Accident Ins. Co. v. Clark, 175 Okla. 282, 52 P. (2d) 763:

"It is the general rule that a misrepresentation or concealment as to a matter of law is not sufficient basis upon which to predicate fraud, for the reason that everyone is presumed to know the law; but there are well-known exceptions to this rule. Epp v. Hinton, 91 Kan. 513, 138 P. 576, L. R. A. 1915A, 675; 12 C. J. 353.

"Where one places reliance upon the superior knowledge of another who is presumed to know, the courts will not permit him to be deceived by the other making misrepresentations as to matters of law on a material question for the purpose of inducing him to act to his prejudice. If an insurance company authorizes an agent to negotiate a compromise and settlement, there is weighty presumption that such agent has knowledge superior to that of the policyholder as to the rights of the policyholder under the provisions of the policy.

"If, in the case at bar, misrepresentations were made as an inducement to deceive the plaintiff, and, if such misrepresentations, in truth and in fact, did induce the plaintiff to sign the release in question to his prejudice, then there existed the gist of remedial fraud. The modern tendency appears to restrict rather than extend the immunity of one who gains an advantage over another for the express purpose of misleading him on some material question. Cramer v. Kansas City Rys. Co. (Kan.) 211 P. 118; 26 C. J. 1207, 1208, 1209; White v. Harrigan, 77 Okla. 123, 186 P. 224."

When the insured died, the plaintiff's cause of action arose under the contract of insurance. If the death of the insured was due to accidental means, the recovery of the plaintiff was double the amount of the face of the policy. If death was due to other causes, then her recovery was limited to the face amount of the policy. This constituted a question of fact to be determined from the medical evidence. It appears that the plaintiff had information at the time that more than one death certificate had been executed by the physician who had attended her husband during his last illness; that she declined to execute the proof of death when it was first presented to her, retained it in her possession some 60 days; that a kinsman of hers accompanied the insurance agent to Tulsa to obtain information relative to the cause of death and that the attending physician filled out the medical proof which was attached to the proof of death and therein named as cause of death a disease rather than an injury; that this was the proof that was submitted to the defendant and on which it settled with the plaintiff. When the plaintiff brought this action some four years later, a different situation was presented. She was first under the necessity of maintaining an action to rescind and cancel her previous settlement and release, and then to maintain her action for the balance alleged to be due

under the contract of insurance. While the necessity of prosecuting a separate equitable action for rescission prior to maintenance of an action at law does not exist in this state by reason of the provisions of the Code, sections 4, 164, 196, 197, and 198, O. S. 1931 (see, also, Owens v. Purdy, 90 Okla. 256, 217 Pac. 425, and Kennedy v. Raby, 174 Okla. 332, 50 P. (2d) 716), nevertheless, it is essential that the right to the equitable remedy be clearly established before the action at law may properly proceed. Plaintiff's action was not one for damage resulting from actionable fraud, but was a combination of equitable action for rescission and cancellation and a legal action for money judgment on contract. Some confusion has arisen in the reported cases by reason of failure to take into consideration the distinction between the two types of actions. In the recent case of Beatrice Creamery Co. v. Goldman, 175 Okla. 300, 52 P. (2d) 1033, it was said:

"Where a release for personal injuries has been executed and the party executing the release seeks to set aside the same because of fraudulent representations, it must be shown that such representations were (1) material, (2) false, (3) known by the party making them to be false or that such party made them recklessly, without any knowledge of their truth, and as a positive assertion, (4) that they were made with the intention that they should be acted upon by the party to whom they were made, (5) that such party acted in reliance upon them, and (6) that he thereby suffered injury.

"A person who executes a release for a claim for damages for personal injuries received, and who acted deliberately and intelligently, cannot rescind it for fraudulent representations upon discovering that the injuries did not heal as rapidly as he supposed at the time of signing the release, even though the attending surgeon told him he would be all right in a short time, where no fraud, deceit, or imposition was practiced upon him, and the opinion of the surgeon was given in good faith."

So, in the case now under consideration, assuming that plaintiff's statement of the transaction which took place between her and the agent of the defendant was correct in every detail, such evidence was insufficient to entitle her to a rescission and cancellation of the settlement and release which she had executed in April, 1928. According to her testimony, she was aware of the fact at the time she was talking with the agent that the amount of her recovery under the policy would be determined by what the proof of death would disclose, and the fact that the agent may have told her that payment would be made on such basis was nothing new, since she had this information, and such a statement on his part could not have influenced her action. She also appears to have not been governed thereby, since she retained the form for making proof of death for some little time before executing the same. The mere fact that the physician who had attended the insured during his last illness had made out three apparently contradictory death certificates could not affect the true situation, and the defendant, in the absence of proof showing that it was in some manner responsible for such certificate, could not be held liable to the plaintiff therefor, particularly since from the record it appears that the defendant had no knowledge thereof except knowledge as its agent may have obtained and which from the evidence appears to have been purely hearsay and gained from the plaintiff or her uncle. Neither of the death certificates so executed was transmitted to the defendant. On the other hand, the physician who attended the insured during his last illness executed an independent statement which was attached to and accompanied the proof of death, which was addressed to the defendant at its home office and wherein said physician gave a disease as the cause of death and on which the defendant made settlement with the plaintiff. There was no proof of any bad faith accompanying the transaction, and the proof on the part of the plaintiff is wholly insufficient to establish any overreaching, unfairness, or advantage taken by the defendant by reason of its superior knowledge and her ignorance. In our opinion the evidence is not sufficient to establish a mutual mistake even had such been pleaded. Under these circumstances, the cause should not have been submitted to the jury, and the action of the trial court in overruling the defendant's motion for directed verdict constituted error. In view of the conclusion thus reached, we deem it unnecessary to discuss the other questions raised and presented by the defendant. The judgment of the trial court is reversed and remanded, with directions to enter judgment for the defendant.

BAYLESS, V. C. J., and WELCH, PHELPS, CORN, and GIBSON, JJ., concur.