ANTRIM LUMBER COMPANY, a Missouri Corporation, and Insurance Company of North America, Plaintiffs in Error,

v.

Ray BOWLINE, d/b/a Bowline Construction Company, Defendant in Error.

No. 41677.

Supreme Court of Oklahoma.

Oct. 14, 1969.

Hess Crossland, of Conner, Winters, Randolph & Ballaine, Tulsa, Malcolm Miller, of Foulston, Siefkin, Powers, Smith & Eberhardt, Wichita, Kan., for plaintiffs in error.

Vernon A. Brown, Paul E. Garrison, Tulsa, for defendant in error.

LAVENDER, Justice.

This appeal involves judgments recovered by the defendant in error, Ray Bowline, doing business as Bowline Construction Company (hereinafter called the plaintiff), in an action for judgment for the balance claimed to be due him as the contractor under a construction contract, and to have the same declared to, and foreclosed as, a valid mechanic's and materialman's lien, and for judgment on a bond for attorney fee, interest and court costs.

His action arose out of a written contract (hereinafter called the "base contract") that was entered into, as of August 1, 1962,

between the plaintiff and Antrim Lumber Company, a corporation, for the construction, by the plaintiff, of a two-cell sanitary sewage lagoon and an outfall sewer line connecting the lagoon to the sanitary sewage gathering lines within a platted area then being developed by the lumber company, and two supplemental oral agreements between the same parties under which the plaintiff constructed one section of a storm sewer to serve the platted area and one section of a sanitary sewage gathering line to serve a portion of the platted area.

The plaintiff in error, Insurance Company of North America, was named as a defendant in the district court only because it is the surety on a bond for the payment of any reasonable attorney's fee and all court costs and interest that might be adjudged against the lumber company, filed by the lumber company in connection with a cash deposit with the court clerk to secure the discharge, as provided in 42 O.S.1961 § 147, of the property in the platted area from a lien claimed by the plaintiff for the payment of an amount which the plaintiff claimed was unpaid under those contracts. Unless otherwise indicated, the term "defendant," when used in the singular, will refer only to Antrim Lumber Company.

The base contract between the defendant, as "Owner," and the plaintiff, as "Contractor," provides, in paragraph numbered "1" thereof, that the contractor agrees to furnish all labor and materials necessary to construct, and to construct, the sanitary sewer lateral lines serving the described "addition" from the southwest corner of said addition to the lagoon site, and the lagoon, and that "All such construction shall conform to the plans previously approved by the Oklahoma State Health Department, relating to the aforedescribed property, and all construction shall conform to the standard specifications adopted by the City of Tulsa for the construction of sanitary sewers."

The base contract also provides, in paragraph numbered "2" thereof:

"The estimated quantities of work to be performed and the unit price to be paid to Contractor for each item of work are as follows:

| "Excavation Rock | 600 cu. yds. at $5.00 | $3,000.00 |
| "Excavation Dirt | 1,251 cu. yds. at 1.50 | 1,867.50 |
| "Lagoon Exc. and Embankment (earth only) | 16,000 cu. yds. at 0.20 | 3,200.00 |
| " * * * | | * * * * * |
| "Total | | $22,783.00 |

"The above quantities are estimated only and Contractor shall be paid on the basis of actual quantities of work performed. The parties hereby designate Shibley-Lane Engineering Co. as agent of each of the parties for the purpose of determining actual quantities of work performed pursuant to the contract. The actual quantities shall be measured by the Engineer during the performance of the work and his determination of quantities shall be binding on both parties hereto. * * *."

During the progress of the work on the lagoon and outfall-sewer project and prior to approval of that project by the State Health Department and the acceptance of that project by the defendant, the work on the gathering-line project and storm sewer project was completed and separate estimates covering the work on each of those projects, as well as three "partial" estimates of work done on the lagoon and

outfall-sewer project, all prepared and signed by the project engineer, A. E. Lane, and all providing for retainage of ten per cent of the amount shown thereon, were submitted to the plaintiff and were endorsed "approved" by him, and, after being okehed by Charles Pratt (who, according to the testimony of a vice president of the defendant, was the agent of the defendant concerning the development of the subdivision served by these projects as well as concerning the work on these projects), were paid by the defendant. After approval of the project by the State Health Department, a "final" estimate, prepared by the project engineer and purporting to reflect all of the work done on the lagoon and outfall-sewer project, all payments theretofore made thereon, the amounts retained on all three projects, and the amount due the plaintiff on all three of the projects ($13,433.38), was submitted to the plaintiff for his approval, but he refused to endorse his approval thereon and filed a statement of lien claimed against the property being developed as a subdivision and served by the project, in the principal amount of $23,291.74.

Attached to the lien statement as an exhibit thereto was an itemized statement (which treats the items concerning the gathering-line and storm-sewer projects as "extras"), showing the number of units of various "items" of labor and materials which the plaintiff claimed to have furnished on the lagoon and outfall-sewer project, on the gathering-line project, and on the storm-sewer project, and as "extras" in connection with the outfall-sewer project itself, the price claimed by him for each unit, the resulting amount claimed by him for each such "item," and the total amount claimed to have been earned by him as to each group of "items" (lagoon and outfall-sewer project $45,266.70, gathering-line project $1,073.93 storm-sewer project $4,226.25, and $4,917.40 as "extras" in connection with the lagoon and outfall-sewer project), for a gross amount of $55,424.03, and also showing payments on the lagoon and outfall-sewer project in

the sum of $26,362.64 (which is the sum of the payments shown on the project engineer's "final" estimate with respect to that project, and showing that the plaintiff claimed to be unpaid $513.41 retained by the defendant on the gathering-line and storm-sewer projects (the same amount shown therefor on the project engineer's "final" estimate, $3,874.27 for unpaid items claimed by him on the gathering-line and storm-sewer projects and as "extras" in connection with the lagoon and outfall-sewer project, as well as an unpaid balance of $18,904.06 on the lagoon and outfall-sewer project, and a total of $23,291.74 claimed to be due him from the defendant.

That itemized statement also shows (on the same lines with the number of units of each item and the prices and extensions thereof, as claimed by the plaintiff) the number of units of each item, the unit prices and extensions thereof, which the plaintiff contended had been approved by the project engineer for payment, and the differences, if any, between the number of units, unit prices and extensions thereof, as claimed by the plaintiff and as approved by the project engineer for payment.

Thereafter, the defendant made additional payments to, or for the benefit of, the plaintiff, and the plaintiff filed an amended lien statement indicating the balance claimed to be $10,570.50, to which was attached a similar itemized statement which gave the defendant credit for an additional sum and indicated an unpaid balance of $10,570.50, without changing anything else shown on the itemized statement attached to the original lien statement.

In order to discharge the platted area described in the original lien statement and amended lien statement from such lien claim, as provided in 42 O.S.1961, § 147, the defendant deposited $10,570.50 with the court clerk and filed the above-mentioned bond, with Insurance Company of America as the surety thereon, to cover attorney fee, interest and court costs.

The plaintiff commenced this action, seeking a personal judgment against the

defendant, Antrim Lumber Company, in the principal amount of $10,570.50, and against both defendants on the bond for interest on that amount, court costs, and a reasonable attorney fee for his attorneys. Purported copies of the base contract (marked Exhibit A), the original lien statement with the itemized statement attached thereto (marked Exhibit B), the amended lien statement with itemized statement attached (marked Exhibit C), and the surety bond for attorney fee, interest and court costs (marked Exhibit D), were attached to the petition. Similar copies of those instruments (with the amount claimed due the plaintiff in his amended lien statement revised to show $10,439.51 instead of $10,570.-50 as hereinafter mentioned) were, by stipulation of the parties, admitted in evidence at the commencement of the trial.

In his petition and an amendment thereto, the plaintiff alleges the execution and delivery of the base contract, the making of the oral agreements concerning the gathering-line and storm-sewer projects, the performance, by him, of the three agreements, the furnishing, by him, of all of the items of labor and materials listed in the itemized statements attached to Exhibits B and C to the petition in the performance of the base contract and as "extras" furnished at the direction of the engineering firm named in the base contract and of the defendant, the engineering firm's approval, in whole or in part, of some of the items of labor and materials and the amounts claimed therefor by the plaintiff and its failure to approve some of the items at all, as indicated on the itemized statement attached to Exhibits B and C to the petition, the filing of the original lien statement, subsequent payments by the defendant, the filing of the amended lien statement, the defendant's filing of the surety bond and depositing of cash in the amount of $10,570.50 with the court clerk, and claiming an unpaid balance of $10,570.50 due from the defendant to the plaintiff for such labor and materials.

The plaintiff also alleges in his petition "that the said Engineer, Shibley Lane Engineering Company, has wholly failed to exercise an honest judgment in arriving at said quantity figures as set forth in said exhibits; that said Engineering Company did not make actual measurements on the items in dispute between the parties herein during the performance of the work by the plaintiff in performance of said contract as required by said contract; that said quantity figures asserted by said Engineering Company are arbitrary, capricious and replete with gross mistakes so as to constitute and imply bad faith on the part of said Engineering Company and said quantity measurements, as set forth in said exhibits, the provisions of the contract between the parties hereto, 'Exhibit A' to the contrary notwithstanding, are not binding upon this plaintiff, and plaintiff is entitled to judgment against the defendant Antrim Lumber Company for the actual quantities of work and labor performed by him on said project, all as set forth in plaintiff's 'Exhibits B & C' attached hereto, all in the sum of $10,439.51."

The defendants' answer contains a general denial but expressly admits the execution and delivery of the base contract and the correctness of the copy thereof attached to the petition, and except with respect to the correctness of the amount claimed by the plaintiff, admits the filing of the original lien statement and amended lien statement, the surety bond for attorney fee, interest and court costs, the correctness of the copies of those instruments attached to the plaintiff's petition, and the depositing of $10,570.50 with the court clerk. The answer also admits that the itemized statement attached to Exhibit B to the petition correctly shows the quantities approved for payment by Shibley Lane Engineering Company as the agent of the contracting parties to measure the actual quantities of work done by the plaintiff. It also admits that Antrim Lumber Company is indebted to the plaintiff in the amount of $712.24 and tenders that amount to the plaintiff out of the cash deposited with the court clerk. The answer prays for judgment against the plaintiff for costs and a reasonable attorney fee.

The plaintiff's reply rejects the tender so made by the defendants and renews the prayer of the petition.

At the commencement of the trial, the plaintiff was (without any objection by the defendants or either of them) permitted to, and did, amend by interlineation his petition and the copy of his amended lien statement that had been marked for introduction in evidence as plaintiff's Exhibit 3, as well as the copy of his amended lien statement that was attached to his petition as Exhibit C thereto, by changing the amount $10,570.50, wherever it appeared in those instruments, to read $10,439.51.

Also at the commencement of the trial, the defendants objected to presenting to a jury any evidence with respect to the impeachment of the engineer's determinations as to quantities and amounts, and objected to the empanelling of a jury at that time. Those objections were overruled by the trial court. At the close of all of the evidence on behalf of both sides, the defendants moved that the court, as a chancellor in equity, decide the issue as to impeachment of the engineer's determinations and enter its findings and judgment that the engineer's determinations were binding upon both parties because no fraud, or gross error, or failure to exercise an honest judgment, on the part of the engineer, had been established by the evidence; and, in the alternative, the defendants, at the same time, demurred to the evidence and moved the court to instruct the jury to return a verdict for the defendants. Those motions and the demurrer to the evidence were overruled by the trial court and, except for the matter of interest, court costs and attorney fee, all of the issues were submitted to the jury.

The jury returned a verdict for the plaintiff in the full amount prayed for, $10,439.-51, and the trial court rendered judgment accordingly against the defendant, Antrim Lumber Company, in that principal amount. At a later hearing on the plaintiff's application for judgment for attorney fee, interest and court costs (at which the parties stipulated that $3,000.00 would be a reasonable fee for plaintiff's attorneys if he be entitled to judgment for attorney fee, interest and costs, and that the introduction of any evidence on that point was waived), the trial court found and concluded that the plaintiff was entitled to such a judgment against both defendants and rendered judgment accordingly. This appeal involves those judgments.

The defendants' first proposition is that the trial court committed reversible error in submitting to a jury, over the defendants' objections, the issue of cancelling or setting aside the project engineer's "final determination and award," which the contract between the parties made conclusive and binding upon them, instead of deciding that issue for itself as a chancellor in equity.

They argue that, where, as here, a construction contract provides that the determination of an identified architect or engineer concerning certain matters shall be binding upon the parties, his determination of such matters is conclusive, and cannot be set aside, except upon a showing of actual fraud on the part of the architect or engineer, or of a failure on the part of the architect or engineer to exercise an honest judgment, or of such gross error on the part of the architect or engineer as would, necessarily, imply bad faith, and constitute constructive fraud, on his part; that the petition of a contractor seeking to recover more than the amount that would be due him under such a determination by the identified architect or engineer, and alleging, as a basis therefor, actual fraud on the part of the architect or engineer, or a failure on the part of the architect or engineer to exercise an honest judgment, or such gross error on the part of the architect or engineer as would, necessarily, imply bad faith, and constitute constructive fraud, on his part, contains two separate causes of action—one a cause of action in equity to cancel or set aside the architect's or engineer's determinations, and the other one a cause of action at law for the amount that the plaintiff claims would be due him if the determinations by the architect or engineer

be cancelled and set aside; and that such a cause of action in equity must be decided by the court, as a chancellor in equity, before the cause of action at law can proceed to trial.

As a starting point for their argument under the first proposition, the defendants (as well as the plaintiff) cite City of Lawton v. Sherman Machine & Iron Works (1938), 182 Okl. 254, 77 P.2d 567, wherein the plaintiff-contractor sought to recover balances claimed to be due him, according to the final certificates of the City Engineer, under two contracts with the defendant-city for the construction of two portions of a water system for the city, which contained a provision that: "To prevent all disputes and litigations, it is further agreed by the parties hereto that the City Engineer shall, in all cases, determine the amount and the quality of the work of the several kinds of work which is to be paid for under the terms of this contract; and he shall decide all questions which may arise relative to the execution of the contract, on the part of the contractors; and his estimates and conclusions shall be final and conclusive." The city alleged fraud on the part of the City Engineer in connection with the making of the certificate relied on by the plaintiff. The defendants quote the second paragraph of this court's syllabus to the opinion:

"Generally, where an engineer is designated in a building or construction contract as the person who shall be the arbiter of the amount and character of the work done, and the amount due the contractor under the contract, the final certificate of approval of such engineer is binding upon the parties. The approval or certificate, however, may be avoided upon a showing of *actual* fraud or of such gross errors or mistakes as to constitute *constructive* fraud."

(Emphasis supplied here)

In connection with the matter of the avoidance or impeachment of such a certificate, this court, in the City of Lawton case, made, or quoted with approval from other jurisdictions, statements to the effect that: The law writes into such a contractual provision a requirement that the architect or engineer must, at all times, and in respect to every matter submitted to his determination under such a provision, exercise an honest judgment and commit no such mistake as, under all the circumstances, would imply bad faith, and that his certificate must be made upon such knowledge of the subject matter as to warrant an opinion binding upon the parties to the contract. To make a certificate without a proper knowledge of the facts, which upon investigation is found to be untrue, is equivalent in law to the making of a certificate known to be false, for the result is the same—one is the product of open fraud, and the other is the product of such bad faith as to operate as a fraud in law.

In the City of Lawton case, a jury had been waived and the case tried to the court, so the question of whether or not it is error, in such a case, to submit to a jury the question of whether or not the engineer's decisions, involved therein, had been impeached was not involved. In National Surety Company v. Board of Education of City of Hugo (1917), 62 Okl. 259, 162 P. 1108 (cited in the City of Lawton case), the question of whether or not the engineer's decisions, involved therein, was submitted to the jury along with the other issues raised by the pleadings and the evidence, but the question of error in so doing was not raised or decided.

To support their argument that the petition of the plaintiff in the present case contains two causes of action, one, a cause of action at law for the recovery of the amount claimed to be due under the construction contract, and the other one a cause of action in equity to cancel or rescind the project engineer's determinations as to quantities and amounts, and that the cause of action in equity must be decided by the court before there can be any issue to be submitted to a jury, the defendants rely primarily upon the Oklahoma case of State Life Insurance Company of Indianapolis v. Ussery (1937), 180 Okl. 337, 69

P.2d 43, and the New Mexico case of Odell et al. v. Colmor Irrigation & Land Company (1929), 34 N.M. 277, 280 P. 398, although they also cite the Oklahoma cases of Okmulgee Producing & Refining Company v. Baugh (1925), 111 Okl. 203, 239 P. 900, and Garrett et al. v. Kennedy et al. (1943), 193 Okl. 605, 145 P.2d 407, and the Oregon case of Mayer et al. v. East Side Logging Company (1929), 130 Or. 341, 278 P. 957, 280 P. 343, as lending some support to their theory.

In State Life Insurance Company of Indianapolis v. Ussery et al., supra, this court did hold that, when, in order to maintain an action at law, it is necessary to obtain rescission and cancellation of a contract such as a release from liability, proof sufficient to support such *equitable* remedy must be adduced before the question involved in the action at law can be submitted to the jury. However, it was for error of the trial court *in overruling the defendant's motion for a directed verdict,* because the plaintiff had failed to sustain the burden of proving the elements of "equitable" fraud as (distinguished from "actionable" fraud which may be involved in an action at law), listed in the opinion, that this court reversed the judgment for the plaintiff with directions to enter judgment for the defendant. Neither that case nor the other Oklahoma cases cited by the defendants in support of this argument, each of which clearly involved a cause of action in equity combined with an action at law, holds that it is reversible error for a trial court, in such a case, to submit to the jury the issues in both causes of action [and, see Kennedy et al. v. Raby (1935), 174 Okl. 332, 50 P.2d 716, which involved a fact situation similar to that pleaded in the Ussery case, and in which the appellant expressly raised the question of the trial court's submitting to the jury the issues in the cause of action in equity instead of deciding those issues before submitting the cause of action at law to the jury]. Certainly, none of those cases supports the defendants' argument that allegations directed to impeaching a determination or

decision of an architect or engineer, which, under the construction contract involved in the case, is declared to be binding upon the parties to the contract, constitutes a *cause of action* in equity.

■ In a case like the present one, the plaintiff-contractor does not seek to rescind, cancel, or even reform or modify, the contract between him and the defendant-owner of the property involved, on the ground of fraud on the part of the defendant, but, to the contrary, seeks only to recover judgment for the amount which he claims would be due him under all of the terms and provisions of their contract as entered into, including the terms and conditions thereof which (under the principles of law stated in the City of Lawton case) the law reads into the provisions of the contract under which certain determinations or decisions of an identified architect or engineer are to be binding upon both parties to the contract: That all such determinations or decisions shall be free from actual fraud on the part of the architect or engineer, and that such architect or engineer shall, at all times and in respect to every matter to be determined or decided by him, exercise an honest judgment (based upon such knowledge of the subject matter as to warrant a determination or decision binding upon the parties to the contract), and will commit no such mistake or error as, under all of the circumstances, would imply bad faith and constitute constructive fraud on his part.

■ In the Oregon case cited by the defendants (Mayer et al. v. East Side Logging Company, supra), it is stated that the presumptions are in favor of the determinations or decisions made under such contractual provisions. This is logical, since the parties to the contract start out by assuming that the architect or engineer will comply with those implied terms and conditions of the contract. Therefore, since, under the principles of law stated in the City of Lawton case, any such determination or decision of such an architect or engineer may be impeached by show-

ing that he failed to comply with those implied provisions of the contract between the parties, we think that the matter of impeaching such a determination or decision is analogous to overcoming a presumption of law which is not a conclusive one, rather than being analogous to rescinding, cancelling, or reforming, a contract for fraud on the part of the other party to the contract.

For these reasons, we hold that, in a suit for the recovery of money claimed to be due under a construction contract which provides that the determination or decisions of an identified architect or engineer as to certain matters shall be binding upon the parties to the contract, allegations in the pleadings directed toward impeaching such a determination or decision for fraud, either actual or constructive, on the part of the architect or engineer, do not constitute a cause of action in equity, and that all of the issues of fact raised by the pleadings and evidence in such a case, including the issues concerning the impeachment of such a determination or decision by the architect or engineer, may, properly, be submitted to a jury.

In the Oregon case cited by the defendants, the construction contract prescribed different prices per cubic yard for excavating three different classes of materials, defined in the contract, and provided that an identified engineer's certificate as to the classification of the materials excavated by the contractor would be final. In their pleadings, the plaintiff-contractors prayed for a decree declaring invalid the certificate of the engineer as to the number of cubic yards of each class of materials excavated by the plaintiffs, and also prayed that the court adjudicate the amount due the plaintiffs under the contract. Only alleged errors of the engineer in his classification of the materials excavated were involved. In reversing the judgment for the plaintiffs, with directions to enter judgment based upon the engineer's certificate, the Supreme Court of Oregon held that the determination of the designated engineer as to the classification of materials excavated under

a construction contract which provides that such determination by the engineer shall be final, will not be disregarded for "mere errors of judgment" (as distinguished from "palpable" mistake or mistake so gross as to evidence partiality on the part of the engineer), and that no more than such "mere errors of judgment" on the part of the engineer was disclosed by the evidence in that case. That case was tried to the court, apparently without any objection thereto by either party, but the opinion does not even suggest that the Oregon court had ever held that it is error to submit to a jury the question of whether or not such a determination has been impeached by the evidence.

The construction contract involved in the New Mexico case cited by the defendants (Odell et al. v. Colmor Irrigation & Land Company, supra), was quite similar to the one involved in the Oregon case, just discussed, and the plaintiff-contractors therein, like the plaintiff-contractors in the Oregon case, prayed that the final estimate of the designated engineer be "vacated and set aside," on the ground of fraud, actual and constructive, on the part of the engineer in his classification of the materials excavated by the plaintiffs, and also prayed that the correct amount due the plaintiffs be determined and judgment rendered therefor. The trial court found that the engineer's certificate was not based upon actual and correct classification, made in good faith in the exercise of honest judgment, but was based upon gross mistake, and the court's findings set forth its determination of the correct amount of material in each of the four classifications of materials defined in the contract. Judgment was for the plaintiffs, vacating and setting aside the engineer's certificate, and for the amount due under the court's findings as to the correct classifications of the materials. The decree and judgment were reversed with directions to enter judgment for the plaintiffs for the amount due under the engineer's final certificate, on the basis that the amount which the trial court found was the correct amount of materials

in each classification was the average of the amounts shown in the engineer's certificate and by three engineers who testified in the case as experts, with the Supreme Court observing that, if the project engineer's determination was good enough to be used as evidence of the correct classifications, it was too good to be vacated, so that the Supreme Court was not bound by the trial court's finding as to the correct classifications or as to gross mistake on the part of the engineer.

The opinion in that New Mexico case mentions that the defendant's demand for a jury trial was denied by the trial court, and, without expressly passing upon that matter, indicates that, in New Mexico, the phase of such a case which involves vacating the determination by the designated engineer is considered to be a cause of action in equity. However, the theory behind that view of the matter is not even suggested by that opinion. Therefore, we do not feel constrained to accept, blindly, this view instead of the opposite view which, we believe, is supported by logic.

The defendants' first proposition is denied.

The defendants' second proposition is to the effect that, in a case of this kind, the final determination and award of the engineer cannot be impeached except by "clear, cogent, and convincing evidence" of actual fraud on the part of the engineer, or of a failure on the part of the engineer to exercise an honest judgment, or of such gross error on the part of the engineer as would, necessarily, imply bad faith, and constitute constructive fraud on his part; that, in the present case, there was no allegation, or evidence, of any actual fraud on the part of the engineer, and the evidence concerning the engineer's failure to exercise an honest judgment and concerning gross errors on his part was not "clear, cogent, and convincing;" and that, therefore, the trial court erred in submitting that issue to the jury, even if the case does not involve a cause of action in equity, for, in such latter event, the trial court should have sustained the defendants' demurrer to all of the evidence and motion for a directed verdict.

We notice that the trial court instructed the jury that (among other things) "gross mistake or the failure to exercise an honest judgment is never presumed and cannot be inferred from facts consistent with honesty of purpose, but in a case of this nature, where gross mistake or failure to exercise an honest judgment is alleged, it must be proved by clear, cogent, convincing, positive and satisfactory evidence which preponderates to a degree of overcoming all opposing evidence and repelling the presumption of good faith." Neither the plaintiff nor the defendants excepted to the giving of that instruction. Without passing upon the correctness or incorrectness of such a rule of evidence in cases of this nature generally, we shall treat that instruction as stating a proper rule for the purposes of the present case.

At the commencement of the trial and as an aid to the jury in considering the evidence as it came in, each of the jurors were, by agreement, furnished a copy of an instrument, marked "plaintiff's Exhibit 14." This instrument will be hereafter referred to as the "comparison sheet." The comparison sheet, as its name implies, contained comparative figures representing the plaintiff's and the project engineer's versions as to the amount of work done by the contractor, and for which he asked to be compensated in accordance with the provisions of the contract.

The comparison sheet lists a total of 46 "items" divided into four groups. The first group, of 23 items, relates to the lagoon and outfall sewer project. The second group, of 6 items, relates to the gathering lines; the third, consisting of 6 items, to the storm-sewer portion; and the fourth group, of 11 items, to the lagoon and outfall sewer lines.

While there was some conflict in the evidence on some of the points involved, there was competent evidence which would reasonably support a finding that the plaintiff furnished all of the items of labor and

materials he claims to have furnished in performing the agreements between plaintiff and defendant, in the quantities claimed by plaintiff. It further appears from the evidence, as to classifications of items not contemplated by the original contract, that such additional work was done with the knowledge and at least the tacit approval of defendant. We think there was competent evidence to establish the fact that the project engineer did not correctly measure the actual quantities of work done by plaintiff. We are of the further opinion that this evidence, on the whole, was sufficient to satisfy the above-quoted instructions of the trial court to the jury to the effect that, before the jury could return a verdict for the plaintiff, they must find gross mistake and, or, a failure to exercise an honest judgment on the part of the project engineer in making his computations.

We hold the trial court did not err in overruling defendants' demurrers to all of the evidence, or in overruling defendants' motions for a directed verdict. Nor did the trial court err in submitting to the jury the question of whether or not the determinations by the project engineer had been impeached.

The defendants' second proposition cannot be sustained.

Because the defendants' fourth proposition relates to the matter of impeaching the engineer's determinations as to quantities, but their third proposition does not, we shall consider the fourth proposition before considering their third proposition. Their fourth proposition is that the trial court erred in giving Instruction No. 4:

> "You are instructed that a gross difference in the amount found by the plaintiff to be due and owing under the contract between the parties to this action, with the amount awarded by the engineer, may be a fact which you can consider in ascertaining whether or not the engineer's findings should be conclusive upon the parties to the contract."

In its preliminary instruction, concerning the pleadings, the trial court quoted the contractual provision involved herein, and, in connection therewith, also instructed the jury (in Instructions Nos. 2, 3, and 5) that "when the parties to a contract agree that an engineer shall determine the quantities of work performed pursuant to a contract and his determination of quantities shall be binding on both parties, a Court and jury is without authority to disturb the engineer's findings unless the parties seeking to avoid said engineer's finding and award proves gross mistakes on the part of said engineer as would necessarily imply bad faith or the jury finds that the engineer failed to exercise an honest judgment;" that " 'gross mistake' is a mistake which is beyond all allowance, not to be excused, flagrant, shameful, and that which brings about a great injustice;" that "the proof of mere incompetency or mere negligence or simple negligence on the part of the engineer as to the quantities of material furnished and labor performed is insufficient to prove gross mistake or the failure to exercise an honest judgment;" that "gross mistakes or failure to exercise an honest judgment which would permit you to vitiate the engineer's award in this case must be so gross as to imply bad faith;" that "before the engineer, Lane, can exercise an honest judgment in ascertaining the actual pay quantities of work performed by plaintiff pursuant to the contract herein, he must have knowledge of the subject matter upon which his findings as to actual pay quantities are based, and unless he does have such knowledge of the subject matter, he cannot exercise an honest judgment;" that "gross mistake or the failure to exercise an honest judgment is never presumed and cannot be inferred from facts consistent with honesty of purpose, but in a case of this nature, where gross mistake or failure to exercise honest judgment is alleged, it must be proved by clear, cogent, convincing, positive and satisfactory evidence which preponderates to a degree of overcoming all opposing evidence and repelling the presumption of good faith;"

and, in Instruction No. 6, after limiting the amount of the plaintiff's recovery, "if you find and believe from the evidence, under the instructions given you herein, that A. E. Lane committed such gross mistake as to imply bad faith, or that he failed to exercise an honest judgment," the trial court instructed the jury "If, however, you fail to find that A. E. Lane committed gross mistakes or failed to exercise an honest judgment, as defined in these instructions, then your verdict will be in favor of the plaintiff in the sum of $712.24" (which is the amount tendered by the defendant as being the amount yet due the plaintiff under the engineer's determinations).

The defendants excepted to the giving of Instruction No. 4 and their exception thereto was noted in the instructions, over the signature of the trial judge, immediately following that instruction, but neither the defendants nor the plaintiff excepted to any of the other instructions given by the trial court. So, without approving, necessarily, any of the other instructions as properly stating the law involved, we accept them, for the purposes of this case, as being proper instructions.

We are bound by the principle, stated in the fifth paragraph of the court's syllabus to Southwest Stone Co. v. Hughes (1947), 198 Okl. 257, 177 P.2d 489, that:

"Instructions, as a general rule, should be construed together as a whole, and, when so construed, if they properly state the law, they will not be objectionable, although some of them, or portions thereof, standing alone, might be misleading or may be technically inaccurate."

■ Particularly when viewed in the light of the other instructions given by the trial court concerning such a contractual provision and the impeachment thereof, we cannot agree with the defendants that Instruction No. 4 invited the jury to return a verdict for the plaintiff, but think that it tells the jurors that, in determining whether or not mistakes as to quantities, if any, on the part of the engineer were such gross mistakes as to imply bad faith on

his part, they would be permitted to take into consideration any gross difference between the quantity claimed and proved by the plaintiff and the quantity approved by the engineer. If it was error for the trial court to give Instruction No. 4, it was harmless error (12 O.S.1961, § 78, and 22 O.S.1961, § 1066).

The defendants' fourth proposition is denied.

The defendants' third proposition is that the trial court erred in overruling their objection to evidence offered by the plaintiff to sustain his claim for $10.00 per cubic yard for 115 cubic yards of rock excavation more than six feet below the surface of the ground in the outfall-sewer trench, as an attempt to vary the terms of a written contract by parol evidence.

There is no question but that the base contract provides for the payment of $5.00 per cubic yard for rock excavation in the outfall-sewer trench contemplated by that contract, without providing any express exception to that price.

The project engineer as well as the plaintiff testified, in substance and effect, that, during the installation of the outfall-sewer line, the engineer decided to cut through a "hog-nose" hill rather than to install the sewer pipe, above ground, around a bend in a ravine caused by the "hog-nose," as indicated by the plans and specifications for the sewer, and set hub-stakes showing the new alignment for the sewer and the proper elevation for the flowline of the sewer at each hub-stake, which required that the bottom of the trench be as much as 20 feet below the surface of the ground part of the way through the hill, with all of the excavation of more than six feet below the surface of the ground being in rock; and that the cut-sheets for that trench (which were a part of the plans and specifications for the trench and consisted of drawings of cross-sections of the trench, in 50-foot sections, showing the original surface of the ground and the required elevations of the flow-line of the pipe for each cross-section, thus indicating the depth

of the excavation to be made by the plaintiff) indicated little, if any, excavation in excess of six feet below the surface of the ground.

Apparently the testimony questioned by the defendants was the testimony by the plaintiff that he told the project engineer, at the time this change was being made, that he could not excavate up to a depth of 20 feet in rock for $5.00 per cubic yard and that he was told by the engineer that he knew that it would cost more and that it would be brought out in his final estimate. Without denying that conversation, and without indicating in any way that the quantity of such rock excavation claimed by the plaintiff was not correct or that the $10.00 per cubic yard claimed therefor by the plaintiff was not a reasonable price for such work, the project engineer testified that, since the base contract provided one price, and only one price, for rock excavation in that trench, he included that excavation in the 845.9 cubic yards of rock excavation in that trench approved by him for payment at the base contract price of $5.00 per cubic yard.

■ We think that it is reasonable to construe the provision in the base contract for the payment of $5.00 per cubic yard of rock excavation in the outfall-sewer trench contemplated by the base contract as being intended by the parties to be applicable to rock excavation not substantially in excess of the six-foot maximum depth contemplated by the plans and specifications, and as not being intended by the parties to be applicable to rock excavation substantially in excess of that contract depth.

The defendants also argue that such evidence would vary the terms of the base contract by making ineffective the provisions of paragraph numbered (6) thereof:

"It is agreed that the Owner may, from time to time, make all alterations deemed desirable by adding, omitting or deviating from the plans and specifications without impairing the validity of this Agreement. However, such alterations shall not be effective until a memorandum of the change, approved by the Engineer and reflecting the amount to be added or to be deducted from the total to be paid to Contractor, shall have been signed by the parties or their authorized agents."

Apparently, this argument is directed at the deviation from the plans and specifications which resulted in taking the sewer line through the hog-nose hill instead of around it, concerning which the project engineer and the plaintiff testified, as well as being directed at the price claimed by the plaintiff for the extra-depth rock excavation involved in such deviation. Assuming, without deciding, that this argument could sustain the defendants' objection to the plaintiff's testimony concerning the conversation about the price for the excavation involved in such deviation from the plans and specifications, we note that, according to uncontroverted evidence which was admitted without any objection by the defendants, there were numerous deviations from the original plans and specifications which were a part of the base contract; and that, in each instance, the provisions of paragraph numbered (6) of the base contract were completely ignored by the project engineer as well as by the parties to the contract.

Although none of the work done by the plaintiff on the storm-sewer and on the gathering line was contemplated by the base contract, it is clear that the parties agreed, orally, that, to some extent at least, such work would be governed by the provisions of the base contract, and, as a matter of fact, the payment-estimates for those two supplemental projects (including the retention by the defendant of ten per cent of the value of the work covered by those estimates until payment of the project engineer's final payment-estimate on the lagoon and outfall-sewer project) were handled, by all those concerned, in the same manner as provided in the base contract concerning the engineer's payment-estimates of work done on the lagoon and outfall-sewer project. All of the items of labor and materials required for the two

supplemental projects were treated as deviations from the original plans and specifications which were a part of the base contract and as constituting "extras" not contemplated by the base contract.

The plaintiff's claim, in the total amount of $55,424.03, lists 46 items of labor and materials for the three projects, but those items fall into 36 classifications of items, 16 of which classifications of items are priced in the base contract and 20 of which classifications of items are not priced in the base contract. With respect to the gathering-line project, his claim includes six classifications of items of labor and materials, all of which are priced in the base contract, and, with respect to the storm-sewer project, his claim includes six classifications of items of labor and materials, two of which are priced in the base contract and four of which are not priced in the base contract. In addition to approving for payment, at the base-contract price claimed by the plaintiff, one or more units in each of seven of the eight classifications of items priced in the base contract, the project engineer approved for payment, at the same price claimed by the plaintiff, one or more units in each of the four classifications of items not priced in the base contract.

With respect to the lagoon and outfall-sewer project, the engineer approved for payment (in addition to one or more units in each of 16 classifications priced in the base contract), at the same price claimed by the plaintiff, one or more units in each of eight classifications of items not priced in the base contract, and, at a price lower than the price claimed by the plaintiff, one unit in one classification of items not priced in the base contract.

The "extra" items so approved by the project engineer for payment (and, according to the defendants' theory of the case, all items approved by the project engineer for payment, except for an unpaid balance of $712.24, are covered by payments made by the defendant prior to the filing of the plaintiff's amended lien statement) are in the total amount of $10,888.81,

with $971.30 thereof being in connection with the gathering-line project, $4,162.75 being in connection with the storm-sewer project, and $5,754.76 in connection with the lagoon and outfall-sewer project. The $5,754.76 so approved for payment in connection with the lagoon and outfall-sewer project is equal to 14.162% of the total of $40,562.71 approved by the engineer for payment in connection with that project, and the $10,888.81 in "extras" so approved by the engineer for payment in connection with all three projects is equal to 23.828% of the total of $45,696.76 which he approved for payment for all work in connection with the three projects.

Although the project engineer testified that he did not know anything about three of seven "extra" items as to which he approved no units for payment, the plaintiff testified, among other things, that all of the items of labor and materials listed in his claim which were not contemplated by the base contract were performed or furnished and put in place at the direction of the project engineer with the knowledge of Charles Pratt of Antrim Lumber Company and all deviations from the original plans and specifications were at the direction of the project engineer with the approval of Mr. Pratt, and the defendant company had accepted the entire job. A vice-president of Antrim Lumber Company testified that Charles Pratt was an agent of that corporation with respect to the development of the platted area served by these projects as well as with respect to the construction of the three projects involved in the plaintiff's claim, and that the company had accepted the entire job. Charles Pratt testified that, during the progress of the work on these projects, he had numerous conferences with the plaintiff, and with the plaintiff and the project engineer, concerning the work done, being done and to be done, including the deviations from the plans and specifications, and confirmed his knowledge of all deviations from the original plans and specifications. And, as noted above, except for $712.24, all of the items approved for payment by

the project engineer for the three projects, in the total amount of $45,696.76, including the above-mentioned "extra" items in the total amount of $10,888.81, were paid for by the defendant.

In the fourth paragraph of its syllabus to the case of Flour Mills of America, Inc. v. American Steel Building Company, Inc. (1968), Okl., 449 P.2d 861, this court held that:

"Under the provisions of 15 O.S.1961 § 237, a contract in writing may be altered by an executed oral agreement, as well as by another contract in writing, so that the provision that no extra work or change in the work shall be made or done except upon written order therefor, included in a written construction contract, may be amended, or even abrogated, by an executed oral agreement. Such an amendment or abrogation may be effected by a series of instances in which the contractor has carried out or performed oral orders for extra work or for changes in the work which indicate the parties' intention to amend, or to abrogate, the provision for written orders for all such work."

We think that the series of instances involved in the circumstances outlined above indicate the parties' intention to abrogate the provisions of paragraph numbered (6) of the base contract.

The defendants' third proposition is denied.

And, since the defendants have failed to sustain any of their attacks upon the proceedings involved in the trial court's judgment in favor of the plaintiff and against defendant, Antrim Lumber Company, in the principal amount of $10,439.51, that judgment is affirmed.

In their fifth and final proposition, the defendants contend that the trial court erred in rendering any judgment for the plaintiff on the bond for attorney fee, interest and court costs.

There is no question that the plaintiff's amended lien statement with itemized statement attached thereto, when filed with the court clerk, indicated that the plaintiff was claiming a lien in the amount of $10,570.50, as the difference between the $55,424.03 value of the items of labor and materials claimed to have been furnished by the plaintiff, and payments by the defendant in the total amount of $44,853.53 indicated on the itemized statement, or that the defendant deposited with the court clerk cash in the amount of $10,570.50, and filed the surety bond for attorney fee, interest and court costs involved herein, as provided for in the first portion of 42 O.S.1961, § 147:

"Any person against whom a lien is filed under the provisions of the law relating to mechanics' and materialmen's liens may at any time upon three (3) days notice in writing to the claimant discharge such lien by depositing with the Court Clerk in whose office such lien claim has been filed *the amount of such claim* in cash and executing and filing with such Court Clerk a good and sufficient bond to the claim and [claimant] with adequate, solvent sureties conditioned that such person will pay any reasonable attorney's fee and all court costs, and interest, that may be adjudged against him finally by any Court of competent jurisdiction in the event such claimant recovers judgment on such claim *in the amount for which such claim is filed*; * * *." (Emphasis supplied)

They argue that, since the plaintiff recovered judgment on his claim in the amount of $10,439.51, which is less than the $10,570.50 amount of his lien claim as filed with the court clerk, which the defendant deposited in cash with the court clerk, any judgment on the bond for attorney fee, interest and court costs is prohibited by the express provisions of the same statute (42 O.S.1961, § 147) that:

"* * * In any suit on such claim the sureties on such bond may be made parties defendant and judgment may be rendered in such action on the bond for whatever amount the Court may decree for a reasonable attorney's fee, costs of

suit and interest, but in the event the lien claimant does not recover judgment finally *for the full amount of the cash deposited* no liability shall exist upon said bond and no judgment shall be rendered thereon for any amount, and the balance of such cash deposit over and above the amount of the claim filed shall be returned by such Clerk to the person depositing same. * * *." (Emphasis supplied)

And, because the plaintiff was permitted by the court, at the commencement of the trial, to amend his lien statement by reducing the amount claimed therein by giving the defendant proper credit for all amounts paid by it to, or for the benefit of, the plaintiff prior to the filing of his amended lien statement with the court clerk, the defendants cite 42 O.S.1961, § 172. That statute (in addition to providing that a mechanic's or materialman's lien may be enforced by civil action in the district court of the county in which the land is situated, and that the practice, pleading and proceedings in such an action shall conform to the rules prescribed by the code of civil procedure as far as the same may be applicable) provides that:

"* * * in case of action brought, any lien statement may be amended by leave of court in furtherance of justice as pleadings may be in any matter, *except as to the amount claimed*."

As suggested by the plaintiff, his trial amendment of his lien statement and of his petition was made without any objection by the defendants, so the matter of the efficacy of such amendment cannot be presented for the first time in this court (Smith v. Findley (1956), Okl., 298 P.2d 440). Judgment was rendered for the plaintiff against the defendant in the exact principal amount shown on the plaintiff's lien statement as so amended.

In the circumstances, the trial court did not err in rendering judgment for the plaintiff on the bond for attorney fee, interest and court costs, and, since we have affirmed the trial court's judgment in the

principal amount claimed by the plaintiff, the judgment on such bond is affirmed.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, JACKSON, HODGES and McINERNEY, JJ., concur.

BLACKBIRD, J., concurs in result.