**WALLACE v. TULSA YELLOW CAB TAXI & BAGGAGE CO. et al.**

No. 23512.   Oct. 20, 1936.

J. D. Lydick, John A. Brett, Earl Sadler, and E. B. Glasgow, for plaintiff in error.

Massingale, Duff & Manatt, for defendant in error Tulsa Yellow Cab Taxi & Baggage Company.

BUSBY, J. On April 14, 1930, Era Wallace sustained a personal injury when she was run over by a yellow cab driven by an agent of the Yellow Cab Service Company, a corporation.

On August 30, 1930, she instituted a civil action in the district court of Tulsa county against the Yellow Cab Service Company to recover damages for the personal injury thus sustained. The case was tried on the 3rd day of February, 1931, and resulted in a judgment in her favor in the sum of $7,115 and costs. The case was not appealed and the judgment became final. When she attempted to realize upon the judgment through execution she found that the Yellow Cab Service Company had no assets whatever upon which she could realize. She found that the judgment debtor had gone out of business on March the 1st following her judgment and that the business formerly operated by it was being conducted by the Tulsa Yellow Cab Taxi & Baggage Company.

On the 7th day of May, 1931, Era Wallace, as plaintiff, commenced this action in the district court of Tulsa county against the Tulsa Yellow Cab Taxi & Baggage Company and the Yellow Cab Service Company. She sought relief of an equitable nature. It was her theory in the lower court, which she reasserts on appeal, that the Yellow Cab Service Company, against which she obtained a judgment, is a mere sham or dummy corporation, and that the two corporations named as defendants should be declared in equity to constitute but one entity. She sought to have her judgment against the Yellow Cab Service Company declared a valid obligation against the Tulsa Yellow Cab Taxi & Baggage Company.

Issues were joined by appropriate pleadings filed in behalf of the defendants, and the cause was tried to the court and resulted in a judgment in favor of the defendants. The plaintiff brings the cause to this court for review, appearing herein as plaintiff in error.

It is not disputed by the parties to this appeal that under proper circumstances a court of equity may brush aside the corporate veil and hold two corporations which are nominally distinct entities to be one and the same. The plaintiff affirms and the defendant denies that the facts in this case present a proper situation for such relief. The facts are practically undisputed.

Prior to the first day of March, 1929, the defendant corporation, Tulsa Yellow Cab Taxi & Baggage Company, had been conducting a taxi business in the city of Tulsa. It had a fully paid capital stock of $125,000. Its tangible property was valued at between $50,000 and $60,000. Charles R. Eckes and his wife owned two-thirds of the company's capital stock. The other one-third was owned by Mrs. Frank White. Charles R. Eckes was president of the corporation and drew a monthly salary of $350; Frank White was the company's vice president and drew a monthly salary of $350; L. J. Hottewitz, general manager of the company, owned no stock, but drew a salary of $300 per month; Fred Carlisle was superintendent of shops and drew a salary of $200 per month, and H. B. Edwards was the general utility man and drew a salary of $125 per month.

In 1928 the company began to experience difficulty in procuring public liability insurance to cover damage claims of third persons who might be injured through the operation of taxicabs in Tulsa and vicinity.

On the 1st day of March, 1929, the Yellow Cab Service Company was organized as a separate corporation. Its capital stock was $1,000 divided into ten shares of $100 each. These shares of stock were all purchased by the employees of the old company. They were divided as follows: L. J. Hottewitz $400; Fred Carlisle $300; H. B. Edwards $300. The cash used to purchase this stock was all furnished by Charles R. Eckes, the president of the old corporation. In return for the money he took the demand note of each of the individuals above named for the amount of stock issued to such individual. At the time this case was tried (2½ years later) these demand notes had never been paid. Nor had there ever been a definite demand for payment thereof.

Upon the formation of the new company a lease contract was entered into whereby the Tulsa Yellow Cab Taxi & Baggage Company rented or leased all of its equipment to the Yellow Cab Service Company. It was agreed in the lease contract that the Yellow Cab Service Company should pay the older corporation on a mileage basis for the use of its taxicabs and equipment and should pay the operating expenses and keep the equipment in repair. It was provided that there should be a daily accounting to the older corporation for the receipts of the taxicab business. The lease was to remain in force and effect for a period of two years, but it contained the very pertinent provision that **either party thereto could cancel and terminate the lease and contractual arrangement**

by giving to the opposite party 24 hours' notice. This cancellation feature also provided that cause or reason for cancellation was unnecessary.

It will thus be seen that while the stockholders of the new corporation were not the same as the stockholders of the old corporation, they were all employees of the old corporation, and that the money used to purchase the stock was all furnished by the president of the old corporation in return for demand notes which were never paid.

All of the equipment used by the new corporation belonged to the old corporation, and the old corporation retained a perfect means of dominating the new corporation, since it could at any time upon 24 hours' notice retake and repossess all of the equipment used in conducting the taxicab business without assigning any reason for so doing.

L. G. Hottewitz, who had been general manager of the old company at a salary of $300 per month, became the general manager of the new company at the same salary; he also became its president. Fred Carlisle, the superintendent of shops of the old company, retained his position in the new company at the same salary. He was also vice president of the new company. H. B. Edwards continued in the employ of the new company in the same capacity at the same salary. Eckes and White continued as officers of the old company and continued to draw from it the same salaries they had previously drawn.

As an asserted reason for the organization of the new company, it is explained by Mr. Eckes that he intended to enter the automobile sales business and wished to withdraw from active participation in the management of the taxicab concern. It appears that he did acquire an automobile sales agency and devoted at least a portion of his time to the operation thereof. It is not clear, however, why he could not have continued to operate the taxicab business through the employees and managers previously retained by him who became the employees and manager of the new company. While Frank White continued to draw his salary from the old company, it is disclosed by the record that an appreciable portion of his time was spent in the management of the affairs of the new company, that is, in connection with the operation of the taxicab business.

After its organization the new company was able to obtain public liability insurance for a portion of the first year during which it operated. A number of insurance companies refused to write such insurance for

it, but one accepted the risk. That policy was canceled on February 1, 1930. Thereafter other insurance of that nature was not obtained.

The new company operated the taxicab business in Tulsa for a period of two years under the lease arrangement. Considering the two-year period as a whole, no profit was derived from its business operations. All of the income was absorbed in payment of debts, salaries of its officers and employees, and other operating expenses and in payment of rental to the old company. There were times during the operation of the company when the books showed a surplus of cash, but there was never any declaration of dividends to the stockholders. When the new company ceased its operations, the old company took possession of the property, which it had always owned, and continued to operate the taxicab business, returning to its employment in their former capacities the officers and stockholders of the new company. In other words, the new company merely ceased to do business, but the taxicab business was continued under the control of the same persons in the name of the old company, leaving the judgment which had been obtained in this case during the previous month to stand as a liability against the new company which had no assets.

It is well demonstrated by the record in this case that the taxicab business is one of hazard in which damage claims frequently arise in favor of third persons. This is demonstrated not only by the plaintiff's claim in this particular case, but by the fact that during the period of operation by the companies as reflected by the record in this case a number of smaller claims arose and were paid.

There is a wealth of judicial authority establishing the principle that in a proper case the court will brush aside the corporate veil and disregard the fiction of separate corporate legal entity in order to hold one corporation responsible for the obligations of another corporation which in technical form appears to be a separate entity. In so doing, the courts do not regard as important the fact that both corporations have been organized as separate and distinct entities in compliance with the laws regulating incorporation. The subject in its various phases is treated in three annotations appearing in the current selected case series, A. L. R. They appear in 1 A. L. R. 610, 34 A. L. R. 597, and 50 A. L. R. 611.

From a review and consideration of the

cases mentioned in the foregoing annotations and the cases discussed in the briefs now before us, it appears that the mere fact that stockho'ders in two corporations are the same persons does not destroy the legal identity of the corporations, nor does the fact that one corporation may be in a position to exercise controlling influence through the ownership of stock, or the identity of stockholders, in itself operate to merge the two corporations. There must be something more. Generally speaking, it must appear from an examination of the entire facts either (1) that the separate corporate existence is a design or scheme to perpetuate fraud, or (2) that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation. In other words, it must appear that one corporation is merely a dummy or sham. In such cases the distinct corporate entity will be disregarded and the two corporations will be treated as one. See In re Watertown Paper Co. (C. C. A.) 169 Fed. 252; In re Muncie Pulp Co. (C. C. A.) 139 Fed. 546; Bloch Queensware Co. v. Metzger (Ark.) 65 S. W. 929.

In the case of Buie v. C., R. I. & P. Ry. Co., 55 L. R. A. 861, 95 Tex. 51, 65 S. W. 27, the Supreme Court of Texas looked beyond the colorable corporate identity of two corporations and held them in effect to be the same. The gist of the decision of the court in that case is tersely expressed in syllabus or headnote 2, wherein it is stated:

"A company organized to build and operate an extension of a railroad system into another state will be regarded as but the instrument of such system to carry on its business there, where the stock is all placed in the names of employees of the old corporation, the principal offices of the new corporation are filled by officers of the old one, the old corporation purchases bonds of the new one to construct its road, and furnishes the rolling stock, a traffic agreement is made by which the new corporation is to work for the old one for a long period of time, the benefit of which is to pass with a sale or mortgage of the property of the old one, and the operating divisions of the road show a single system and management."

We have before us two corporations, one having substantial assets in the form of tangible property which had for a number of years been conducting a profitable taxicab business, with a personnel of officers and managers experienced and selected. The other corporation organized at a time when it was becoming difficult to obtain public liability insurance to conduct the same business which had previously been conducted by the older corporation, a business which is hazardous in its nature to the extent that damage claims by third persons are frequent. The new corporation organized to conduct the operation of this business had a paid-in capital stock of $1,000. Its only other asset was its lease contract with the older corporation, but this lease contract is not such an asset as would be of substantial benefit to an attaching creditor. Why? Because the lease could be canceled by the older corporation on 24 hours' notice without cause. It is true that the stockholders in the two corporations are distinct, but it is important to observe that all of the stockholders in the new corporation were employees of the old corporation. The money which was used to purchase their stock was furnished by the president, a majority stockholder, of the old corporation. Demand notes were taken for the stock from the employees. These employees for two and one-half years drew substantial sa'aries from the new corporation, yet demand was never made for payment of the notes. A dividend was never distributed among the stockholders. The absolute and ultimate control of the new corporation remained in the old corporation by virtue of its power to cancel the lease and take back the property necessary for operation of the business. The situation created was such that the new corporation could at any time be put out of business solely at the option of the old corporation if danger should threaten or financial embarrassment occur. The business continued in the hands of the new corporation to be managed by substantial'y the same personnel. Its place of business remained the same.

The new corporation was a mere instrumentality or adjunct of the old or dominant corporation. We conceive it our duty in this case to look beyond the form and to the substance of the transactions here involved. The fiction of separate legal entity in this case must be disregarded and the two corporations held to constitute but a single entity.

The cause is reversed, with directions to the trial court to enter judgment for the plaintiff in accord with the views herein expressed.

McNEILL, C. J., and PHELPS, CORN, and GIBSON, JJ., concur.