OSCN Found Document:LIFETOUCH NATIONAL SCHOOL STUDIOS v. OKLAHOMA SCHOOL PICTURES

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 LIFETOUCH NATIONAL SCHOOL STUDIOS v. OKLAHOMA SCHOOL PICTURES
2024 OK CIV APP 17
Case Number: 120562
Decided: 11/13/2023
Mandate Issued: 07/05/2024
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV

Cite as: 2024 OK CIV APP 17, __ P.3d __

 

LIFETOUCH NATIONAL SCHOOL STUDIOS INC., a Minnesota corporation, Plaintiff/Appellant,
v.
OKLAHOMA SCHOOL PICTURES, LLC, an Oklahoma limited liability company; Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Harvey D. Ellis, Jaycee Booth, Randall J. Snapp, CROWE & DUNLEVY A PROFESSIONAL CORPORATION, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Armando J. Rosell, ROSELL LAW GROUP, L.L.P., Oklahoma City, Oklahoma, for Defendant/Appellee

JOHN F. FISCHER, JUDGE:

¶1 Lifetouch National School Studios, Inc., appeals the judgment in favor of Oklahoma School Pictures, L.L.C., in this summary proceeding. Lifetouch holds a judgment against Tulsa School Pictures, L.L.C., which it seeks to collect from Oklahoma School Pictures in this action. Lifetouch contends that Tulsa School Pictures is the alter ego or, "mere instrumentality" of Oklahoma School Pictures and argues that disregarding the separate legal existence of Tulsa School Pictures is necessary to protect the rights of third persons and accomplish justice. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S.2021, ch. 15, app. 1. Viewing the summary judgment record most favorably to Lifetouch, there are unresolved issues of fact regarding the separate existence of Tulsa School Pictures and whether it was the instrumentality of Oklahoma School Pictures. We reverse the judgment in favor of Oklahoma School Pictures and remand for further proceedings to determine that issue.

BACKGROUND AND PROCEDURAL HISTORY

¶2 When this action was filed, Lifetouch had sued Tulsa School Pictures in the United States District Court for the Northern District of Oklahoma for tortious interference with Lifetouch's business in the Tulsa area, but the liability of Tulsa School Pictures for that conduct had not been determined. Before the federal court litigation was concluded, Tulsa School Pictures filed a voluntary petition for bankruptcy on November 27, 2017. Tulsa School Pictures was eventually liquidated in that proceeding. While the bankruptcy was pending, Lifetouch negotiated a settlement of its federal court case against Tulsa School Pictures. That settlement resulted in a judgment entered in the federal case against Tulsa School Pictures, which fixed the amount of damages for Tulsa School Pictures' tortious interference with Lifetouch's Tulsa area business.

¶3 Lifetouch filed this action against Oklahoma School Pictures on December 15, 2017, one month after Tulsa School Pictures filed for bankruptcy. As originally filed, Lifetouch sued Oklahoma School Pictures and its two owners, Bart Baker and Nathan Dunn, asserting theories of recovery similar to those asserted in the federal court action against Tulsa School Pictures. Lifetouch alleged that Tulsa School Pictures was the instrumentality or alter ego of Oklahoma School Pictures and liable for Tulsa School Pictures' tortious conduct. (ROA Tab 1, Plaintiff's First Amended Petition, Fourth Cause of Action, p.16, ¶ 83).

¶4 This is the second appeal in this case. In the first appeal, we held that Lifetouch had stated a claim against Oklahoma School Pictures based on its alter ego theory of liability and reversed the district court's dismissal of that claim.[1] We framed the issue to be resolved on remand as follows:

Lifetouch's claim of alter-ego liability seeks to hold Oklahoma School Pictures liable for the torts committed by the now-insolvent Tulsa School [Pictures] . . . . If Lifetouch is successful in proving that Tulsa School [Pictures] was merely an instrumentality of Oklahoma School Pictures, "the legal distinction between these corporations may be disregarded, and they may be treated as one entity for purposes of liability." Gilbert v. Sec. Fin. Corp. of Okla., 2006 OK 58, ¶ 22, 152 P.3d 165.

Lifetouch Nat'l Sch. Studios, Inc., v. Oklahoma Sch. Pictures, L.L.C., Bart Baker, and Nathan Dunn, No. 117,747, slip op. at 7-8. (COCA Div. II May 7, 2020) (unpublished), cert. denied (Okla. Sup. Ct. Dec. 14, 2020). The parties proceeded to resolve that issue on remand by filing competing motions for summary judgment, arguing for and against the proposition that Tulsa School Pictures was the instrumentality of Oklahoma School Pictures. The motions were supported by affidavits, deposition testimony and documentary evidence, and were argued to the court without the presentation of witnesses or additional evidence. The district court found that Tulsa School Pictures was not the instrumentality of Oklahoma School Pictures and declined to disregard Tulsa School Pictures' legal status as a separate limited liability company. In this appeal, we resolve whether the district court was correct in granting judgment in favor of Oklahoma School Pictures.

¶5 Certain facts relevant to that issue are not disputed. Oklahoma School Pictures was formed as an Oklahoma limited liability company. Oklahoma School Pictures has three members, Baker, Dunn and Oklahoma School Pictures. Oklahoma School Pictures was formed on April 22, 2010, and its current operating agreement was signed by Baker and Dunn on September 26, 2013. Oklahoma School Pictures is primarily involved in taking school pictures in the Oklahoma City area. The Oklahoma School Pictures operating agreement "reserved to the members" the management of the company. Oklahoma School Pictures' operating agreement also defined the specific functional responsibilities of Baker and Dunn as follows: "Assist in management of LLC."

¶6 Tulsa School Pictures was formed as an Oklahoma limited liability company on February 19, 2016. Tulsa School Pictures had two members, Baker and Dunn. Its operating agreement was signed by Baker and Dunn on February 23, 2016. Baker and Dunn, each contributed one-half, i.e., $7,500 each, of the initial $15,000 capital used to start Tulsa School Pictures. The Tulsa School Pictures operating agreement "reserved to the members" the management of the company. The Tulsa School Pictures operating agreement also defined the specific functional responsibilities of Baker and Dunn as follows: "Assist in management of LLC."

¶7 In its first ten months of operations, Tulsa School Pictures was able to generate substantial revenue, $454,671, primarily from former Lifetouch clients. The following year, Tulsa School Pictures generated $753,878 in gross revenue from the same source. However, that income was insufficient to pay all of Tulsa School Pictures' operating expenses or sustain its viability as a separate legal entity and it filed for bankruptcy. While it was in business, Tulsa School Pictures was primarily involved in taking school pictures in the Tulsa area.

¶8 Lifetouch provides professional photography services, including school pictures, throughout the United States. Lifetouch has been in business for more than eighty years. Lifetouch maintained an office in Owasso, Oklahoma, through which it provided services to the Tulsa area. In November 2016, Lifetouch initiated the federal court action against one of its former employees, who had served as Lifetouch's Territory Manager in the Tulsa area. After discovery, Lifetouch amended the complaint to add Tulsa School Pictures as a defendant. Lifetouch alleged tortious conduct by Baker, Dunn, Tulsa School Pictures and key members of Lifetouch's Owasso office management team, who left Lifetouch to work for Tulsa School Pictures in the first half of 2016.

I. The First Appeal

¶9 The first appeal in this case was precipitated by a January 14, 2019 Order dismissing Lifetouch's amended petition against Oklahoma School Pictures. Among the claims asserted in its amended petition, Lifetouch alleged that Tulsa School Pictures was the alter ego or instrumentality of Oklahoma School Pictures and liable for the tortious acts of Tulsa School Pictures, including Baker and Dunn's wrongful solicitation of Lifetouch's Tulsa office employees.[2] Lifetouch alleged that Baker and Dunn did so before forming Tulsa School Pictures, tortiously interfering with Lifetouch's business and wrongfully obtaining Lifetouch's customers in the Tulsa market. In its "Fourth Cause of Action," Lifetouch relied on "alter ego liability" to hold Oklahoma School Pictures liable for the tortious acts of Tulsa School Pictures.

¶10 With respect to Lifetouch's alter ego claim, the defendants relied on 12 O.S. § 2012(B)(7) (failure to join an indispensable party under § 2019), in support of their motion to dismiss. The defendants argued that Oklahoma law does not recognize a "stand alone" cause of action for alter ego liability. The defendants maintained that Tulsa School Pictures was an indispensable party to the alter ego claim but could not be joined as a defendant because of the automatic stay prohibiting non-bankruptcy litigation entered when Tulsa School Pictures filed for bankruptcy on November 28, 2017.[3]

¶11 Tulsa School Pictures' bankruptcy began as a reorganization but was converted to a liquidation managed by a court-appointed Trustee. Lifetouch and the bankruptcy Trustee negotiated a settlement of Lifetouch's claim against Tulsa School Pictures which was finalized on June 29, 2018, while the defendants' motion to dismiss in this case was pending. Pursuant to the terms of the settlement agreement, the parties agreed to "the entry of an Agreed Judgment in favor of Lifetouch and against [Tulsa School Pictures] only in the Federal Case." One of the "rights and obligations created in [the settlement agreement]" was entry of the $750,000 Agreed Judgment in favor of Lifetouch and against Tulsa School Pictures.

¶12 In its response to the defendants' motion to dismiss its amended petition in this case, Lifetouch informed the district court of the settlement agreement in the Tulsa School Pictures bankruptcy case, and attached a copy of the June 29, 2018 settlement agreement as well as a copy of the proposed judgment. The bankruptcy judge approved the settlement agreement on August 8, 2018. On the parties' joint motion, the district court judge in Lifetouch's original federal case entered the judgment in favor of Lifetouch on August 14, 2018, "as damages regarding Lifetouch's tortious interference claim against Tulsa School Pictures . . . ."

¶13 In their reply in support of their motion to dismiss Lifetouch's claim in this case, the defendants argued that entry of the agreed judgment in the federal case provided "new grounds for dismissal." On January 14, 2019, the district court entered an order dismissing Lifetouch's amended petition. As recited in its order, the district court was aware that Lifetouch had "obtained a final judgment against [Tulsa School Pictures]" in the federal action. However, the district court agreed with the defendants' and ruled that Tulsa School Pictures was a necessary and indispensable party to this action.

¶14 With respect to Lifetouch's alter ego claim against Oklahoma School Pictures, the district court held that Tulsa School Pictures could not be joined because Lifetouch had already obtained a judgment against it in the federal court case. This was error. See Wallace v. Tulsa Yellow Cab Taxi & Baggage Co., 1936 OK 665, ¶ 0(1), 61 P.2d 645 (Syllabus 1) ("When one corporation is but an instrumentality or adjunct of another by which it is dominated and controlled, a court may look beyond the form to the substance of the situation, and disregard the theory of distinct legal entity, for the purpose of holding the dominant corporation responsible for the liabilities of the sham corporation."). In Wallace v. Tulsa Yellow Cab Taxi & Baggage Co., the plaintiff sued, in the same action, the company it had obtained a judgment against and the new company holding all of the assets of the judgment debtor. See also Stephens v. Mike's Transport, 2023 OK CIV APP 26, ¶ 8, 535 P.3d 772 (citing Oklahoma Supreme Court precedent for the proposition that: "When remedies in aid of execution appear inadequate, a prior judgment may be enforced in a new action founded upon it.").

¶15 Further, the issue in the federal court litigation was Lifetouch's claim for damages against Tulsa School Pictures arising out of alleged tortious interference with Lifetouch's Tulsa area business. That issue was resolved by the judgment in favor of Lifetouch. "A judgment is the final determination of the rights of the parties in an action." 12 O.S.2021 § 681. Once that judgment was entered, there was nothing left to litigate with respect to the tortious conduct of Tulsa School Pictures and joining it as a party would have been futile.

II. The Second Appeal

¶16 Lifetouch seeks to collect its federal court judgment against Tulsa School Pictures from Oklahoma School Pictures in this action at law by invoking an equitable remedy, the alter ego doctrine. The issue in this appeal is whether Oklahoma School Pictures can be held liable for that judgment because Tulsa School Pictures was merely the instrumentality or alter ego of Oklahoma School Pictures. Consequently, "complete relief" with respect to that issue can be obtained in this case without joining Tulsa School Pictures. 12 O.S.2023 § 2019(A)(1). As we held in the first appeal, the issue in this case is resolved, in the first instance, by Gilbert v. Security Finance Corp. of Oklahoma, 2006 OK 58, 152 P.3d 165 (abrogated on other grounds, improper exercise of personal jurisdiction, by Montgomery v. Airbus Helicopters, Inc., 2018 OK 17, 414 P.3d 824).

¶17 The district court also erroneously ruled that Lifetouch's perceived inability to join Tulsa School Pictures in this case was a defect that could not be cured by any amendment to Lifetouch's petition. For the reasons previously stated, Tulsa School Pictures was not an indispensable party in this case. If specific reference to the judgment was required, Lifetouch could have easily incorporated its judgment by amending its petition if allowed to do so by the district court. However, the district court did not grant Lifetouch leave to amend its petition and dismissed the case. See 12 O.S.2021 § 2012(G) ("On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied . . . .").

¶18 Finally, whether Lifetouch should have been required on remand to amend its petition, to incorporate its judgment against Tulsa School Pictures as the basis for its alter ego claim against Oklahoma School Pictures, is not an issue in this appeal. Oklahoma School Pictures did not raise that issue with the district court on remand after the first appeal. This Court does not generally reach issues the appealing party fails to raise in the trial court. Osage Nation v. Bd. of Commr's of Osage Cnty., 2017 OK 34, ¶ 17, 394 P.3d 1224, 1229.

¶19 In addition, whether Lifetouch incorporated its judgment into an amended petition filed in this case is immaterial. The fact that Lifetouch holds a judgment against Tulsa School Pictures, the unsatisfied principal portion of which is $734,399.15, is undisputed in this summary judgment record.[4] ROA, Tab 6 (Oklahoma School Pictures' Response and Objection to Plaintiff's Motion for Summary Judgment, "Response to Lifetouch's Statement of Undisputed Material Facts" Nos. 13-14.) "This appeal was prosecuted pursuant to Rule 1.36 which provides for the trial court filings to serve as the appellate briefs and the assignments of error on appeal are those listed in an appellant's petition in error." Id. ¶ 4, 394 P.3d at 1229 (footnote omitted).

STANDARD OF REVIEW

¶20 "[The] standard of review applied in an appeal is based upon the nature of the decision made by the trial court, e.g., a decision based on law, fact, mixed law and fact, as well as the nature of the action (law versus equity), and the procedural context of the decision, such as dismissal of an insufficient petition [or] a summary judgment . . . ." Indep. Sch. Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, ¶ 16, 473 P.3d 475, 485.

The question of whether a case is legal or equitable in its nature is determinable by the pleadings, rights and remedies of the parties, and if it appears that the primary cause of action is equitable in its nature and that there are other issues of a legal nature which are incidental to the primary cause of action, the cause is one of equitable cognizance and will be determined on equitable principles.

Ball v. Fleshman, 1938 OK 380, ¶ 0, 83 P.2d 870 (Syllabus 1).

¶21 Lifetouch's attempt to collect from Oklahoma School Pictures its judgment against Tulsa School Pictures is an action at law. See Robert L. Wheeler, Inc. v. Scott, 1991 OK 95, ¶ 13, 818 P.2d 475, 479-80. However, to collect that judgment, Lifetouch invokes the alter ego doctrine to disregard the legal identity of Tulsa School Pictures, the judgment debtor.

¶22 The alter ego doctrine is an equitable remedy which may be used to disregard the separate existence of a corporation that "is the mere instrumentality or business conduit of another corporation . . . ." 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 41.10, Alter ego or mere instrumentality doctrine; see also § 41.25, Equitable basis of remedy, Westlaw (database updated September 2022), and Sautbine v. Keller, 1966 OK 209, ¶ 16, 423 P.2d 447, 452. It is not a cause of action. 1 Fletcher § 41.10. See TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc., 808 F. SupP.2d 60, 66 (D.D.C. 2011) ("Plaintiff's sole cause of action in this case is for common-law breach of contract; its assertions concerning veil-piercing merely comprise a legal theory by which it hopes to extend liability--on its underlying breach-of-contract claim . . . .") (citing 1 Fletcher § 41.10).

¶23 The alter ego remedy can be employed to establish, in the same action, (1) the liability of an instrumentality for wrongful conduct, and (2) the liability of the dominant company for the wrongful acts of its instrumentality. See Gilbert v. Sec. Fin. Corp. of Okla., 2006 OK 58, ¶ 24, 152 P.3d 165, 175 (holding that "[i]t was not error for the trial court to submit the alter-ego liability issue to the jury and to instruct the jury on alter-ego liability" in an action against the dominant corporation and its instrumentalities). The alter ego remedy can also be employed in a separate action to collect, from one company, a judgment obtained in previous litigation against another company. See Wallace v. Tulsa Yellow Cab Taxi & Baggage Co., 1936 OK 665, 61 P.2d 645. After Lifetouch obtained its judgment against Tulsa School Pictures, it sought to do what the plaintiff in Wallace v. Tulsa Yellow Cab was permitted to do.

¶24 In determining the primary cause of this action in this case, the facts are not in dispute with respect to Lifetouch's action at law; Lifetouch holds a judgment against Tulsa School Pictures, most of which is unsatisfied. Whether Lifetouch can collect that judgment from Oklahoma School Pictures is the "gravamen of [this] action." Ball v. Fleshman, 1938 OK 380, ¶ 5, 83 P.2d 870, 872. Lifetouch relies on the equitable alter ego remedy to attempt to do so. Further, Lifetouch's right to the "equitable remedy must be adduced before [any] questions involved in the action at law can be submitted to the jury." State Life Ins. Co. of Indianapolis v. Ussery, 1937 OK 113, ¶ 0, 69 P.2d 43 (Syllabus 1).

¶25 The equitable remedy issue in this case was resolved when the district court granted Oklahoma School Pictures' motion for summary judgment. Cf., Indep. Sch. Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, ¶ 17, 473 P.3d 475, 485 (stating that equitable proceedings are tried as "civil actions and the merits may be adjudicated using the District Court Rule 13 procedure for summary judgment or summary disposition") (footnote omitted). "Oklahoma [does] not differentiate -- for summary judgment purposes -- between equity suits and actions at law." Shamblin v. Beasley, 1998 OK 88, ¶ 9, n.25, 967 P.2d 1200, 1208.

¶26 The summary judgment procedure "is a search for undisputed material facts that would support but a single inference which favors the movant. It is a method for identifying and isolating non-triable fact issues . . . ." Id. ¶ 9, 967 P.2d at 1207 (emphasis in original). All inferences warranted by the undisputed facts must be viewed in the light most favorable to the party opposing the motion. Brown v. Patel, 2007 OK 16, ¶ 39, 157 P.3d 117, 130. "Summary judgment is improper when reasonable persons may reach different inferences or conclusions from the undisputed facts." Boyle v. ASAP Energy, Inc., 2017 OK 82, ¶ 7, 408 P.3d 183, 188 (footnote omitted).

¶27 The de novo standard governs our review of this appeal. "The standard for appellate review of a summary judgment is de novo and an appellate court makes an independent and nondeferential review testing the legal sufficiency of the evidential materials used in support and against the motion for summary judgment." Id. ¶ 7, 408 P.3d at 187. This is the same standard appellate courts use to review all legal rulings by the trial court in equity cases. Booth v. McKnight, 2003 OK 49, ¶ 12, 70 P.3d 855, 860.

ANALYSIS

¶28 Lifetouch argues that Tulsa School Pictures was the instrumentality of Oklahoma School Pictures and, therefore, Oklahoma School Pictures is liable for Lifetouch's judgment against Tulsa School Pictures. "Generally, a corporation is regarded as a legal entity, separate and distinct from the individuals comprising it." Fanning v. Brown, 2004 OK 7, ¶ 16, 85 P.3d 841, 846. However, the alter ego doctrine is used to disregard the legal status of a corporate entity "if one corporation is simply the instrumentality of another corporation." Id., 85 P.3d at 847 (citing Frazier v. Bryan Mem'l Hosp. Auth., 1989 OK 73, ¶ 16, 775 P.2d 281, 288). "Under the alter ego doctrine, when a corporation is the mere instrumentality or business conduit of another corporation . . . the corporate form may be disregarded." 1 Fletcher § 41.10, Alter ego or mere instrumentality doctrine.

¶29 Oklahoma recognizes the alter ego remedy and has applied it in cases seeking to pierce the "veil" of a corporation's independent legal status.

There is a wealth of judicial authority establishing the principle that in a proper case the court will brush aside the corporate veil and disregard the fiction of separate corporate legal entity in order to hold one corporation responsible for the obligations of another corporation which in technical form appears to be a separate entity.

Wallace v. Tulsa Yellow Cab Taxi & Baggage Co., 1936 OK 665, ¶ 17, 61 P.2d 645, 647-48. "One corporation may be held liable for the acts of another under the theory of alter-ego liability if (1) the separate existence is a design or scheme to perpetuate a fraud, or (2) one corporation is merely an instrumentality or agent of the other." Gilbert v. Sec. Fin. Corp. of Okla., 2006 OK 58, ¶ 22, 152 P.3d 165, 175 (footnote omitted) (abrogated on other grounds, improper exercise of personal jurisdiction, by Montgomery v. Airbus Helicopters, Inc., 2018 OK 17, 414 P.3d 824).

¶30 However, the analysis does not end if the evidence shows that one corporation was the instrumentality of another. For example,

[T]he mere fact that stockholders in two corporations are the same persons does not destroy the legal identity of the corporations, nor does the fact that one corporation may be in a position to exercise controlling influence through the ownership of stock, or the identity of stockholders, in itself operate to merge the two corporations.

Wallace v. Tulsa Yellow Cab Taxi & Baggage Co., 1936 OK 665, ¶ 18, 61 P.2d at 648. "There must be something more." Id. Cf., Sautbine v. Keller, 1966 OK 209, ¶ 17, 423 P.2d 447, 453 (declining to disregard corporate existence where "[t]here was no showing of inequitable or illegal conduct on [defendant]'s part"). Consequently, Oklahoma law requires a two-step analysis to hold one corporation liable for the debts of another. First, the party seeking to impose alter ego liability must satisfy the instrumentality analysis with evidence addressing the nine Gilbert "factors for determining if one corporation may be held liable for the acts of another . . . ." Gilbert, 2006 OK 58, ¶ 23, 152 P.3d at 175. Second, the party seeking to disregard the separate legal existence of one corporation must show that doing so is "necessary to circumvent fraud, protect the rights of third persons, and accomplish justice . . . ." Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, ¶ 10, 143 P.2d 154, 157.

I. Application of the Alter Ego Doctrine to LLCs

¶31 In The Mattingly Law Firm v. Henson, 2020 OK CIV APP 19, 466 P.3d 590, this Court observed that the Oklahoma Supreme Court had yet to apply the alter ego theory in a case involving limited liability companies. Id. ¶ 11, 466 P.3d at 594, cert. denied (March 23, 2020). However, with respect to the collection of debts, the Oklahoma Legislature has equated limited liability companies with corporations. See 12 O.S.2021 § 682(C) ("Members and managers of limited liability companies shall be afforded the same substantive and procedural protection from suits and claims as the protections provided to officers, directors and shareholders of a corporation . . . ."). And, for alter ego liability purposes, we find it unnecessary for the Legislature to have specifically provided that limited liability companies and corporations shall be treated equally. "In any case not provided for in the Oklahoma Limited Liability Company Act, the rules of law and equity . . . shall govern." 18 O.S.2021 § 2060. In Oklahoma, the alter ego principle is a rule of "[b]oth law and equity . . . ." Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, ¶ 10, 143 P.2d 154, 157.

¶32 Like the Mattingly Court, we view the legal principle of alter ego liability applied to corporations as equally applicable to limited liability companies and agree with those courts that have reached a similar conclusion. "'[T]here is no significant difference between the standard for piercing the veil of a corporation versus an LLC . . . .'" Mattingly, 2020 OK CIV APP 19, ¶ 17, 466 P.3d at 59 (quoting Dickson Indus., Inc. v. Thomas Grinding, Inc., 2009 WL 10687735 at *1 n.1 (W.D. Okla. Jan. 14, 2009)). See also, 3A Vernon's Okla. Forms 2d, Bus. Orgs. § 2.07, n.13. "Indeed, were the law otherwise, [managers and members] of an LLC would have greater protection than that existing for other types of corporations." TRC Env't Corp. v. Quoddy Bay LNG, LLC, No. CIV-10-62-C, 2011 WL 5429178, at *2 (W.D. Okla. Nov. 9, 2011) ("Oklahoma law permits piercing the corporate veil of an LLC under the same conditions as required for piercing the corporate veil of a corporation.").

II. Issues in District Court

¶33 As the district court correctly found, fraud is not a basis for Lifetouch's attempt to disregard Oklahoma School Pictures' legal status. However,

the doctrine of alter ego does not apply solely to instances where the corporate existence is used to do wrong, perpetrate fraud, or commit a crime. Rather this doctrine has been amplified to allow application not only for fraud or wrong, but also in cases where the facts require the court to disregard separate existence of the corporation and shareholders in order to protect rights of third persons and accomplish justice.

Sautbine v. Keller, 1966 OK 209, ¶ 15, 423 P.2d 447, 451 (citing Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, 143 P.2d 154, and Buckner v. Dillard, 1939 OK 144, 89 P.2d 326). See also Frazier v. Bryan Mem'l Hosp. Auth., 1989 OK 73, ¶ 16, 775 P.2d 281, 288 (stating that if one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and the two entities treated as one).

Both law and equity, when necessary to . . . protect the rights of third persons, and accomplish justice, disregard the distinct existence and treat them as identical. The doctrine that a corporation is a legal entity, separate and apart from the persons composing it, is a legal theory introduced for purposes of convenience and to subserve the ends of justice, but the concept will not be extended to a point beyond its reason and policy, and when invoked in support of an end subversive of said policy will be disregarded by the courts.

Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, ¶ 10, 143 P.2d 154, 157 (internal citations omitted).

¶34 Pursuant to our holding in the first appeal, Gilbert v. Security Finance Corp. of Oklahoma, 2006 OK 58, 152 P.3d 165, controls the first part of the analysis. "The settled-law-of-the-case doctrine operates to bar relitigation of issues decided and involved by implication in a prior appellate opinion . . . in the same case or controversy." Western Heights Indep. Sch. Dist. No. I-41 of Okla. Cnty. v. State ex rel. Okla. State Dep't of Educ., 2022 OK 79, ¶ 72, 518 P.3d 531, 552 (footnote omitted).

¶35 "The factors for determining if one corporation may be held liable for the acts of another hinge primarily on control." Gilbert, 2006 OK 58, ¶ 23, 152 P.3d at 157 (footnote omitted). The indicia of control regarding a company's operation are neither inherently legal nor illegal. But, as the Supreme Court observed in Wallace v. Tulsa Yellow Cab and Goforth, it is the purpose for which the separate legal entity was created and/or used which determines whether its legal "veil" can be disregarded. Goforth, 1943 OK 244, ¶ 10, 143 P.2d at 157.

The District Court's Judgment

¶36 The district court determined that the material facts relevant to the Gilbert factors were not in dispute and established, as a matter of law, that Tulsa School Pictures was not the alter ego of Oklahoma School Pictures. We agree that the material facts concerning the Gilbert factors were, for the most part, undisputed. However, some of those "facts" were disputed. And more importantly, it is the inferences from the undisputed facts which are dispositive of Oklahoma School Pictures' summary judgment motion. Those inferences must be viewed in the light most favorable to Lifetouch. Hargrave v. Canadian Valley Elec. Co-op., Inc., 1990 OK 43, ¶ 14, 792 P.2d 50, 55 ("All inferences in the evidence must be taken in favor of the party opposing the motion.").

The Gilbert Factors

¶37 As we noted in the Opinion deciding the previous appeal in this case, if Lifetouch is successful in proving that Tulsa School Pictures was merely an instrumentality of Oklahoma School Pictures then, according to Gilbert, "the legal distinction between these corporations may be disregarded, and they may be treated as one entity for purposes of liability." Gilbert, 2006 OK 58, ¶ 22, 152 P.3d 165, 175 (footnote omitted). This is the first prong of the alter ego doctrine analysis.

¶38 Gilbert established nine factors to be considered in determining the instrumentality issue:

(1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant and subservient corporations have common directors and officers, (3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses or losses of the subservient corporation, (6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping the entities separate.

Id. ¶ 23, 152 P.3d at 175 (citing Frazier v. Bryan Mem'l Hosp. Auth., 1989 OK 73, ¶ 17, 775 P.2d 281, 288). With respect to the Gilbert factors, the summary judgment record established the following material facts and inferences:

¶39 1. Common Ownership: Although Oklahoma School Pictures does not own the membership interests -- the equivalent of corporate stock[5] -- of Tulsa School Pictures, it is undisputed that the individuals who own all of Oklahoma School Pictures' membership interests, Bart Baker and Nathan Dunn, also own all of the membership interests in Tulsa School Pictures. Therefore, it is relevant to determining the control issue that Baker and Dunn control both companies. It is also relevant to this factor that Oklahoma School Pictures and Tulsa School Pictures are in the same business, and that Tulsa School Pictures was created to expand Oklahoma School Pictures' business into an adjoining geographic market. The common ownership factor cannot be resolved on the basis of the facts in this summary judgment record.

¶40 2. Common Management: In Oklahoma, "a limited liability company shall be managed by or under the authority of one or more managers . . . ." 18 O.S.2021 § 2013(A). A limited liability company manager is the "person . . . designated by the members of a limited liability company to manage the limited liability company as provided in the articles of organization or an operating agreement." 18 O.S.2021 § 2001(14). It is undisputed that Baker and Dunn, the sole managers of Oklahoma School Pictures, were also the only managers of Tulsa School Pictures and were "designated" as the only individuals to manage both companies. Id. This fact satisfies the common management factor in Gilbert.

¶41 3. Financing: It is undisputed that during the second calendar year of Tulsa School Pictures' existence, a total of approximately $33,000 was provided on nine different occasions in January, February and August of 2017, in order for Tulsa School Pictures to pay its bills. What is not clear from the record is whether Oklahoma School Pictures provided these funds to Tulsa School Pictures directly, indirectly through Baker and Dunn, or whether Baker and Dunn used their separate funds to finance Tulsa School Pictures in 2017. Based on this summary judgment record, Lifetouch is entitled to an inference that this financing was provided by Oklahoma School Pictures or, at least, that fact is disputed.

¶42 4. Capitalization: It is undisputed that Baker and Dunn capitalized Tulsa School Pictures with $15,000. What is not clear from the record is whether Oklahoma School Pictures provided the funds to capitalize Tulsa School Pictures directly, indirectly through Baker and Dunn, or whether Baker and Dunn used their separate funds to capitalize Tulsa School Pictures. Further, there is no evidence in the record relevant to whether this $15,000 was sufficient capital for Tulsa School Pictures to operate as a going concern. For example, there is no comparison of the amount of money Baker and Dunn contributed to capitalize Oklahoma School Pictures with the funds they contributed to capitalize Tulsa School Pictures. Although it is undisputed that Tulsa School Pictures generated substantial revenues while it was in business, it is relevant to the Gilbert inquiry that Tulsa School Pictures declared bankruptcy after less than two years of operation and despite the substantial level of income it generated while it was in business. This fact raises an inference that Tulsa School Pictures was undercapitalized.

¶43 5. Operating Expenses: As discussed in analysis of the Financing factor, Oklahoma School Pictures and/or Baker and Dunn provided approximately $33,000 to pay the operating expenses of Tulsa School Pictures during the second, and last, year that Tulsa School Pictures was in business. In addition, and as discussed in more detail in the following paragraph, it is undisputed that Oklahoma School Pictures paid the salaries and expenses of the employees who provided the initial training to Tulsa School Pictures' employees. These facts would support disregarding Tulsa Oklahoma School Pictures and Oklahoma School Pictures as separate entities.

¶44 6. Source of Business and Assets: As the district court found, it is undisputed that Oklahoma School Pictures operated in a different geographic market from Tulsa School Pictures. But the source of Tulsa School Pictures' business and equipment is disputed. It is undisputed that camera equipment necessary for Tulsa School Pictures to begin conducting business was provided to Tulsa School Pictures. However, the source of the equipment is disputed. Lifetouch contends that Oklahoma School Pictures provided the equipment through another school picture entity in Colorado owned by Oklahoma School Pictures and/or Baker and Dunn. There is evidence in the record to support Lifetouch's contention. Lifetouch is entitled to the inference that Oklahoma School Pictures provided the camera equipment to Tulsa School Pictures at no cost.

¶45 In addition, except for Baker and Dunn who managed both companies, it appears that Tulsa School Pictures had most of its own employees. However, it is undisputed that Oklahoma School Pictures' employees provided the initial photography training for Tulsa School Pictures' employees and trained Tulsa School Pictures employees to follow the policies and procedures used by Oklahoma School Pictures with respect to marketing, sales calls and website development. It is also undisputed that Oklahoma School Pictures and Tulsa School Pictures shared a sales representative. This factor weighs in favor of disregarding the separate legal status of Tulsa School Pictures.

¶46 7. Division or Department: There is no evidence that Oklahoma School Pictures referred to Tulsa School Pictures as a division or department. However, the two companies were in the same business and operated in the same state with some of the same equipment and, at times, shared personnel. Although it appears that Baker and Dunn created Tulsa School Pictures to serve a different geographic market, there is no explanation in the record, legitimate or otherwise, for the purpose or necessity of doing so.

¶47 Further, there is evidence in the record to support Lifetouch's argument that Oklahoma School Pictures treated Tulsa School Pictures as a division, some of which has been discussed. In addition, the two companies had the same mailing address. Although the two companies had separate bank accounts, they used the same bank and, on several occasions, funds from the Oklahoma School Pictures account were transferred into the Tulsa School Pictures account. The two companies filed separate tax returns but used the same accountant. The operating agreements of the two companies are virtually identical. And, Oklahoma School Pictures is represented by the same legal counsel in this litigation who represented Tulsa School Pictures in the bankruptcy proceeding resulting in the judgment Lifetouch seeks to collect here. The evidence on the Division/Department factor does not support summary judgment in favor of Oklahoma School Pictures as a matter of law.

¶48 8. Operational Similarities: Because the leadership of the two companies was identical, the same individuals who established the operational policies and procedures of Oklahoma School Pictures also established the policies and procedures for Tulsa School Pictures. As discussed, before Tulsa School Pictures began to conduct business, Oklahoma School Pictures' employees trained the Tulsa School Pictures' employees on the policies and procedures they were to follow -- the same policies and procedures used by Oklahoma School Pictures. If the two managers of Oklahoma School Pictures wanted Tulsa School Pictures to operate in a different manner, they could have instructed Tulsa School Pictures employees to do so. There is nothing in this record suggesting that Tulsa School Pictures' employees operated that company in a manner different from the way Oklahoma School Pictures was operated. This factor would support disregarding the separate legal status of Tulsa School Pictures; it does not support summary judgment in favor of Oklahoma School Pictures as a matter of law. Cf., Gilbert, 2006 OK 58, ¶ 12, 152 P.3d 165, 172 (noting that the dominant company "own[ed] the policy manual used by the [instrumentality] defendants and provide[d] training for the [instrumentality] defendants' branch employees").

¶49 9. Legal Formalities: Oklahoma School Pictures argues that the informal manner in which Baker and Dunn operated Tulsa School Pictures is irrelevant in determining the alter ego issue, because Tulsa School Pictures was a limited liability company. In support of its argument, Oklahoma School Pictures relies on dicta from footnote 3 in this Court's Mattingly decision, which "slightly modifi[ed] the alter ego analysis applicable to corporations . . . ." The Mattingly Law Firm v. Henson, 2020 OK CIV APP 19, n.3, 466 P.3d 590, 595. The internal operation of closely held limited liability companies may, as a practical matter, be less formal than corporations with more diverse ownership. That observation is equally true for closely held corporations electing tax treatment pursuant to Subchapter S of the Internal Revenue Code. See 26 U.S.C. § 1363. A Subchapter S election provides tax benefits to the owners while maintaining some insulation from individual liability. Id. See also, Buckner v. Dillard, 1939 OK 144, ¶ 22, 88 P.2d 326, 329 (noting that "[a] recognized purpose of a corporation is to permit persons to avoid personal liability").

¶50 However, in determining the control issue for the alter ego analysis, the operational formality, or lack thereof, of a closely held limited liability company is not, as Oklahoma School Pictures argues, entirely irrelevant. The summary judgment record establishes that Tulsa School Pictures did not keep minutes of its company meetings, it did not maintain a corporate ledger and it did not have policies and procedures, at least, policies and procedures different from those Oklahoma School Pictures had adopted. These facts are not necessarily determinative, but they are relevant to the Gilbert analysis -- the more legal formalities are observed, the more likely the entities are separate.

¶51 Further, Mattingly is distinguishable for two reasons. First, the dispositive issue in Mattingly was whether the judgment creditor was entitled to the "charging order" authorized by 18 O.S.2021 § 2034 of the Oklahoma Limited Liability Company Act, 18 O.S. §§ 2000 through 2060. The district court granted the charging order on the judgment debtor's "50% interest" in limited liability companies held in his wife's name finding he was a beneficial owner of one-half of the companies. On appeal, this Court affirmed. "The single issue on appeal is whether the trial court properly granted the charging order by determining the LLCs were [the judgment debtor's] 'alter egos' and the court should pierce the corporate veil of the entities." Mattingly, 2020 OK CIV APP 19, ¶ 8, 466 P.3d 590, 593.

¶52 A charging order is a statutory remedy unlike the equitable remedy at issue in this case. A charging order only affects the financial aspect of a judgment debtor's membership interest in a limited liability company. And, section 2034 provides that the statutory charging order "shall be the sole and exclusive remedy of a judgment creditor with respect to the judgment debtor's membership and capital interest, whether the limited liability company has one member or more than one member." Tulsa School Pictures is not a member of Oklahoma School Pictures and, therefore, has no membership interest which could be the subject of a statutory charging order. Further, the imposition of a statutory charging order does not involve the equitable remedy analysis required to disregard the legal existence of a separate entity required by Gilbert v. Security Finance Corp. of Oklahoma, 2006 OK 58, 152 P.3d 165, the issue dispositive of this appeal.

¶53 Second, although the Mattingly Court also concluded that reverse piercing would have justified access to all the assets of the judgment debtor's companies', this is not a reverse piercing case. Reverse piercing "applies in situations where a plaintiff seeks to hold a corporation liable for the actions of its shareholders or someone else who controls the entity." Lind v. Barnes Tag Agency, 2018 OK 35, ¶ 22, 418 P.3d 698, 705. Reverse piercing is "the opposite of traditional piercing," the remedy relied on by Lifetouch. Mattingly, 2020 OK CIV APP 19, ¶ 10, 466 P.3d at 594. In this case, if Lifetouch is successful, traditional piercing will make the assets of Oklahoma School Pictures available to the judgment creditor because of the actions of Oklahoma School Pictures in creating Tulsa School Pictures as "merely an instrumentality" to subvert the policy which justifies the separate existence of legal entities. Gilbert, 2006 OK 58, ¶ 22, 152 P.3d at 175. See also, Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, ¶ 10, 143 P.2d at 157. Finally, the Oklahoma Supreme Court has never "explicitly recognized" the "reverse piercing" doctrine. See The Mattingly Law Firm v. Henson, Case No. 116,960 (Rowe, J., ¶ 3, dissenting by separate writing to Order denying certiorari, joined by Kauger, Combs, Kane, JJ.) (March 23, 2020).

¶54 There is nothing inherently illegal or improper about Baker and Dunn establishing a company separate from their existing company, Oklahoma School Pictures. McCall v. Chesapeake Energy Corp., 2007 OK CIV APP 59, ¶ 28, 164 P.3d 1120, 1127 (approved for publ'n by Okla. Sup. Ct.) (citing In re Hillsborough Holdings Corp., 166 B.R. 461, 471 (Bankr. M.D. Fla. 1994) for the proposition that "there is nothing inherently wrong" in a parent company managing the business of its subsidiaries).

¶55 Nor is it inherently improper for individuals to form a limited liability company to insulate themselves from personal liability. See Kenkel v. Parker, 2015 OK 81, ¶ 13, 362 P.3d 1145, 1149 (noting that "one of the [long] recognized purposes of incorporation is to permit persons to avoid personal liability"). But the question Gilbert asks is what was the actual purpose of doing so. Was the purpose to organize and control the affairs of Tulsa School Pictures to improperly obtain Lifetouch business in the Tulsa market? If Lifetouch can prove that was the purpose, then the separate legal status of Tulsa School Pictures can be disregarded to "protect rights of third persons, and accomplish justice . . . ." Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, ¶ 10, 143 P.2d 154, 157.

CONCLUSION

¶56 There are disputed facts in this record precluding summary judgment. More importantly, many of the undisputed facts suggest the following inferences in favor of Lifetouch. Approximately six years after Oklahoma School Pictures had been in business in the Oklahoma City area, its two owners, Baker and Dunn, formed Tulsa School Pictures to expand Oklahoma School Pictures' business from the Oklahoma City area market into the Tulsa area market. They did so by hiring key personnel from Lifetouch's Tulsa area office, resulting in a breach of various terms of those employees' existing employment contracts with Lifetouch. Lifetouch has now obtained a judgment against Tulsa School Pictures for tortiously interfering with its business in the Tulsa Area.

¶57 Based on this record, Lifetouch has established that factual disputes must be resolved to determine whether Oklahoma School Pictures created Tulsa School Pictures as an instrumentality to wrongfully obtain the clients and business that Lifetouch had created in the Tulsa area and which Oklahoma School Pictures had not been able to generate on its own. If Lifetouch can prove that Oklahoma School Pictures created Tulsa School Pictures for that purpose, the legal distinction between Oklahoma School Pictures and Tulsa School Pictures "may be disregarded, and they may be treated as one entity for purposes of liability." Gilbert v. Sec. Fin. Corp. of Okla., 2006 OK 58, ¶ 22, 152 P.3d 165, 175.

¶58 The district court's judgment is reversed, and this case is remanded for further proceedings.

¶59 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

HUBER, J., concurs, and BLACKWELL, P.J., concurs in result.

FOOTNOTES

[1] During the first appeal, Lifetouch notified this Court that it was no longer pursuing its appeal of the district court's dismissal of its direct claims against Oklahoma School Pictures, Baker and Dunn. As a result, the appeal was limited to the action at law stated in its Fourth Cause of Action, i.e., whether Lifetouch had stated a claim against Oklahoma School Pictures to hold Oklahoma School Pictures liable for the tortious conduct of Tulsa School Pictures. Oklahoma School Pictures sought review on certiorari of our ruling that Lifetouch had stated that claim. In its petition for certiorari, Oklahoma School Pictures argued that this Court lost jurisdiction to decide the first appeal when Lifetouch abandoned all issues except the district court's dismissal of its alter ego claim. Oklahoma School Pictures argued that the alter ego claim was not a "stand alone" cause of action and by dismissing its direct claims against Oklahoma School Pictures, Lifetouch had no cause of action left to support its alter ego equitable remedy. The error in this reasoning is exposed in the Analysis section of this Opinion. Further, in the reasons for review stated in its petition for certiorari, Oklahoma School Pictures did not mention that Lifetouch had obtained a judgment against Tulsa School Pictures, Oklahoma School Pictures' alleged alter ego, which it was trying to collect from Oklahoma School Pictures. That omission was material to the issue Oklahoma School Pictures sought to have reviewed in its petition for certiorari. Oklahoma School Pictures' petition for certiorari was denied by the Supreme Court on December 14, 2020.

[2] The amended petition was filed after the defendants were successful in obtaining the dismissal of Lifetouch's original petition.

[3] The defendants were correct in pointing out that Lifetouch did not join Tulsa School Pictures as a defendant when it filed this action the month after Tulsa School Pictures filed for bankruptcy. It was prohibited from doing so by the Federal Bankruptcy Code. See 11 U.S.C. § 362 (filing of Tulsa School Pictures' petition for bankruptcy stayed "(1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. . . .").

[4] Lifetouch was able to collect a portion, but not all, of its judgment from the proceeds of the liquidated assets distributed to Tulsa School Pictures' creditors in the bankruptcy case.

[5] Cf., 18 O.S.2021 § 2001(16) (defining "membership interest") and 18 O.S.2021 § 1038 (describing corporate stock).

 

 

 

BLACKWELL, P.J., concurring in result:

¶1 As the majority acknowledges, the alter-ego doctrine is not a stand-alone cause of action. Majority Opinion, 13-14. Rather, it is a method of recovery that must be attached to some cause of action or judgment. 1 Fletcher Cyc. Corp. § 41.10 ("A claim based on the alter ego theory is not in itself a claim for substantive relief, but rather is procedural. A finding of fact of alter ego, standing alone, creates no cause of action.") (footnotes omitted). Thus, in my view, once Lifetouch failed to appeal any of its substantive claims in the prior appeal (Case No. 117,747), it likewise jettisoned its alter-ego theory, leaving it adrift and impermissibly unmoored from any substantive claim or judgment.[1] That appeal should have been dismissed.

¶2 But the appeal was not dismissed.[2] Thus, the decision to allow Lifetouch to attempt to collect its subsequently obtained Tulsa-School-Pictures judgment from Oklahoma School Pictures in this state-court action is the law of the case. With this as the necessary starting point, I agree with the majority that Oklahoma School Pictures failed to show that there are no disputed material facts related to Lifetouch's alter-ego theory of recovery.

¶3 Additionally, I disagree with the majority's characterization of the first Gilbert factor, which the Court determines "cannot be resolved on the basis of the facts in this summary judgment record." Majority Opinion, 24. The question is not one of "common ownership," id. at 23, but "whether the dominant corporation owns or subscribes to all the subservient corporation's stock," Gilbert, 2006 OK 58, ¶ 23. This factor unambiguously favors Oklahoma School Pictures, as it is undisputed that Oklahoma School Pictures owns no portion of Tulsa School Pictures.

¶4 For these reasons, I respectfully concur in the result the majority reaches in this appeal.

FOOTNOTES

[1] The majority maintains that the federal court judgment was sufficiently attached to the state court action. Certainly, this understanding permeated the opinion in the prior appeal. See, e.g., Opinion dated May 7, 2020 (Case No. 117,747, unpublished) at 6 ("In this litigation, Lifetouch seeks to hold Oklahoma School Pictures liable for the judgment against Tulsa School [Pictures] obtained in the federal litigation.") and 3 ("Lifetouch then filed suit in Oklahoma County District Court ...") (indicating that the federal judgment was obtained prior to state court action). However, this is not so. Neither the petition nor amended petition mentions anything about a judgment, pending judgment, or settlement agreement that would result in a judgment. Nor could they have, as the federal judgment did not exist when Lifetouch filed its state-court action against Oklahoma School Pictures and its members.

[2] Oklahoma School Pictures sought a writ of certiorari on this basis. The writ was denied. Order Sheet dated December 14, 2020 (Case No. 117,747) (5-4).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2007 OK CIV APP 59, 164 P.3d 1120, 
MCCALL v. CHESAPEAKE ENERGY CORP.
Discussed

 
2020 OK CIV APP 19, 466 P.3d 590, 
THE MATTINGLY LAW FIRM v. HENSON
Discussed at Length

 
2023 OK CIV APP 26, 535 P.3d 772, 
STEPHENS v. MIKE'S TRANSPORT
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1989 OK 73, 775 P.2d 281, 60 OBJ 1202, 
Frazier v. Bryan Memorial Hosp. Authority
Discussed at Length

 
1939 OK 144, 89 P.2d 326, 184 Okla. 586, 
BUCKNER v. DILLARD
Discussed at Length

 
1990 OK 43, 792 P.2d 50, 61 OBJ 1134, 
Hargrave v. Canadian Valley Elec. Co-op., Inc.
Discussed

 
1991 OK 95, 818 P.2d 475, 62 OBJ 2882, 
Robert L. Wheeler, Inc. v. Scott
Discussed

 
1938 OK 380, 83 P.2d 870, 183 Okla. 634, 
BALL v. FLESHMAN
Discussed at Length

 
1937 OK 113, 69 P.2d 43, 180 Okla. 337, 
STATE LIFE INS. CO. v. USSEBY
Discussed

 
1936 OK 665, 61 P.2d 645, 178 Okla. 15, 
WALLACE v. TULSA YELLOW CAB TAXI & BAGGAGE CO.
Discussed at Length

 
1966 OK 209, 423 P.2d 447, 
SAUTBINE v. KELLER
Discussed at Length

 
2003 OK 49, 70 P.3d 855, 
BOOTH v. McKNIGHT
Discussed

 
2004 OK 7, 85 P.3d 841, 
FANNING v. BROWN
Discussed

 
2006 OK 58, 152 P.3d 165, 
GILBERT v. SECURITY FINANCE CORP OF OKLAHOMA, INC.
Discussed at Length

 
2007 OK 16, 157 P.3d 117, 
BROWN v. PATEL
Discussed

 
2015 OK 81, 362 P.3d 1145, 
KENKEL v. PARKER
Discussed

 
2017 OK 34, 394 P.3d 1224, 
OSAGE NATION v. BD. OF COMMISSIONERS OF OSAGE COUNTY and OSAGE NATION v. OSAGE COUNTY BD. OF ADJUSTMENT
Discussed

 
2017 OK 82, 408 P.3d 183, 
BOYLE v. ASAP ENERGY, INC.
Discussed

 
2018 OK 17, 414 P.3d 824, 
MONTGOMERY v. AIRBUS HELICOPTERS
Discussed at Length

 
2018 OK 35, 418 P.3d 698, 
LIND v. BARNES TAG AGENCY
Discussed

 
2020 OK 56, 473 P.3d 475, 
INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
Discussed at Length

 
2022 OK 79, 518 P.3d 531, 
WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT v. STATE
Discussed

 
1998 OK 88, 967 P.2d 1200, 69 OBJ 3098, 
Shamblin v. Beasley
Discussed

 
1943 OK 244, 143 P.2d 154, 193 Okla. 314, 
MID-CONTINENT LIFE INS. CO. v. GOFORTH
Discussed at Length

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 681, 
Definition of Judgment
Cited

 
12 O.S. 682, 
Judgment Given for or against Several Persons - Petition Dismissal - Limitation on Individual Liability for Judgments Against Corporation
Cited

 
12 O.S. 2012, 
Defenses and Objections - When and How Presented - By Pleading or Motion
Discussed

 
12 O.S. 2019, 
Joinder of Persons Needed for Just Adjudication
Cited

Title 18. Corporations

 
Cite
Name
Level

 
18 O.S. 1038, 
Rights and Options Respecting Stock
Cited

 
18 O.S. 2000, 
Short Title
Cited

 
18 O.S. 2001, 
Definitions
Discussed

 
18 O.S. 2013, 
Management - Qualifications - Number of Managers
Cited

 
18 O.S. 2034, 
Judgment Creditor; Rights; Exclusive Remedy
Cited

 
18 O.S. 2060, 
Cases Not Provided for in Act
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA